Ernest E. Chappel and Romayne R. Chappel, Appellants, v. Walter E. Burwell and Carrie A. Burwell, Appellees.

### Gen. No. 8,728.

Opinion filed January 19, 1934.

Hyer & Gill, for appellants.

Hinchcliff, Miller & Thomas, for appellees; L. C. Miller, of counsel.

Mr. Justice Huffman delivered the opinion of the court.

Appellants purchased a residence property in the City of Rockford, Illinois, from the receiver of the Rockford National Bank. The residence had been constructed by appellees and they were living in the property at the time appellants purchased same. Appellants claim that after their purchase of the premises from the said receiver, and without their knowledge, appellees removed, and were threatening to remove, certain built-in fixtures, which were an integral part of the house, and which were a part of and belonged to the premises as purchased by the appellants.

The principal items in controversy were electric light fixtures, water softener, screens, storm doors and windows, a built-in electric refrigerator, an incinerator, and gas furnace. The premises were purchased by appellants on December 19, 1932, from L. B. Achor, receiver of the Rockford National Bank. It was provided therein that appellants should have possession of the premises on or before January 3, 1933. Appellants state that appellees refused to vacate the premises, and were occupying same at the time of the filing of the bill herein, on March 23, 1933.

Appellants brought their bill as aforesaid, claiming that appellees were removing and threatening to remove certain fixtures that were a part of and belonged to the premises purchased, and asked for a restraining order on appellees against the removal of same. A temporary restraining order was granted. Upon a hearing the court entered its final decree making the temporary restraining order permanent as to the screens, storm windows and doors, and the gas

furnace; and dissolved the same with respect to all other items. Included among these other items were the electric light fixtures, water softener, built-in electric refrigerator, and the incinerator. From that decree of the circuit court of Winnebago county, the appellants prosecute this appeal.

The evidence discloses that appellee, Walter E. Burwell, was vice president of the said Rockford National Bank, and that he was owner of the lot upon which this residence property is located. The appellee desired to build a residence upon this lot. On November 3, 1930, he made application through the Northern Illinois Mortgage Co., of Rockford, for a loan of $13,500, from the Prudential Insurance Co. of America, for the purpose of constructing this home upon this lot. The application for this loan as made by appellee, after describing the character and nature of the house to be built, states that it is to contain certain "built-in and special features." Among the special built-in features listed are gas furnace, electric refrigerator, water softener, and an incinerator.

Appellees secured the above loan and executed their mortgage therefor to the Prudential Insurance Co., on the premises in question, for $13,500. The house was built according to the architect's plans, and the above built-in features were duly installed. Appellees secured another loan of $6,500 and executed a second mortgage for that amount upon the premises in question. The Rockford National Bank passed into receivership, holding the second mortgage. Appellees on or about December 2, 1932, in consideration of the release and discharge of their obligation of $6,500 to said bank, deeded the premises in question to L. B. Achor, receiver of the bank, subject to the $13,500 mortgage to the Prudential Insurance Co.

Mr. Chappel states that Mr. Burwell came to his office for the purpose of interesting him in the pur-

chase of these premises; that he told Mr. Burwell he did not think he would be interested; that Mr. Burwell described the desirability of the premises, and stated to appellant that in case he became interested in the purchase of the property, appellee would like to have the deal go through his hands as he had made an agreement with the receiver, giving him the right to sell the property, if he could find a buyer. Appellee at this time invited appellant out to inspect the property, and appellants did on December 17, 1932, go to the above premises for the purpose of inspecting them, as prospective purchasers. Appellees were present at the time. Appellants claim appellees showed them the electric refrigerator and called their attention to the manner in which it was completely built-in and inclosed by panels so that it appeared as a part of the wall; that they were shown the incinerator, gas furnace and water softener in the basement, and that the working of these appliances was explained; that Mr. Burwell went into detail to explain how the water softener must be looked after and that it needed attention only twice a year; and how the incinerator worked, and that after the material placed therein had been consumed, that it would automatically shut off the heat and required no attention. Appellants further claim that appellees in their conversation about the electric light fixtures stated they had been bought especially for this house, from a firm in Milwaukee. The evidence of the architect discloses that the electric fixtures were so purchased from the Milwaukee firm, and that the plans of this home as prepared by him provided for these special built-in features.

Mr. Seise, president of the Northern Illinois Mortgage Co., through which company appellees obtained the Prudential loan, states that the money was secured upon appellees' application, and that from such money he, himself, paid for the electric light fixtures, electric

refrigerator, incinerator, screens, windows, and practically all the items. Appellees do not deny that the mortgage money secured from the Prudential Insurance Co., as aforesaid, went to pay for the construction of this house and the installation of these special built-in features, which were included in the application for the loan, and which are now in controversy in this appeal.

It therefore appears that these items were contemplated and treated by the contracting parties as constituting a part of the mortgaged security to the Prudential Insurance Co. Appellees' application for the loan discloses this, and the architect's plans attached thereto, according to the testimony of the architect, disclosed the same. This Prudential mortgage stood in the same shape at the time appellees conveyed the premises to the receiver of the bank as it was when originally given.

Appellees had no interest of any kind in the premises after their deed to the receiver. They thereby divested themselves of all right, title and interest in the premises, and conveyed them to the receiver as they were then under mortgage to the Prudential Insurance Co. The receiver in taking this deed to the premises from appellees, subject to the Prudential mortgage, had no power to release to appellees any part of the mortgaged property, or to lessen or impair in any way the mortgage security. The receiver of the bank conveyed the premises to appellants subject to the same Prudential mortgage and with the mortgage standing as originally given.

The mortgaged property is the primary fund for the payment of the mortgage indebtedness, and a transfer of mortgaged property, subject to the mortgage, in equity, passes title to the purchaser in all particulars as mortgaged, and he is entitled to receive the premises and all the appurtenances thereunto affixed or belonging, which are a part of the mortgage security. A

purchaser of mortgaged premises, in equity, is entitled to succeed to all of his grantor's equity in the said premises, without having the same lessened or impaired by any act of his grantor.

Nothing has occurred since the application for the Prudential loan by appellees, and their mortgage on these premises given pursuant thereto, to change the status of these items of property involved herein. It clearly appears that they were considered and treated at that time as a part of the mortgage security. Appellees do not dispute this fact. Appellants are compelled to satisfy the mortgage indebtedness in order to protect their own interest in the property, and upon payment of such indebtedness, they are entitled to receive the property as mortgaged. The mortgaged property being the primary fund for the payment of the mortgage debt, is in all events charged with the satisfaction of such debt. Pomeroy's Eq. Jur., secs. 1205–1209; Jones on Mortgages, secs. 736–740. The appellants, taking these premises subject to this mortgage indebtedness, are in equity entitled to receive them in the same manner and to the same extent as they are pledged for the payment of such mortgage indebtedness.

The mortgagor has only an equity of redemption in the mortgaged property. He may sell the same, and when he does, the purchaser acquires the mortgagor's equity of redemption to all of the mortgaged property. The rights of the mortgagee are in no way affected by a conveyance of the mortgaged premises by the mortgagor. Jones on Mortgages, sec. 676. Thus it is manifest that a conveyance of the mortgaged premises in no way impairs or lessens the security of the mortgage indebtedness. Whether the purchaser personally assumes the payment of the mortgage indebtedness is not controlling, because, in all events, he has purchased the equity of redemption from the mortgagor, and the property being the primary fund for the pay-

ment of the debt, the purchaser is entitled to receive by such conveyance the mortgagor's equity of redemption as it then existed, in all of the property to which the mortgage had attached.

Mr. Burwell invited appellants to visit the premises for the express purpose of trying to interest them in the purchase thereof. Appellees were both present when appellants called, and knew the mission of appellants, and pursuant thereto, showed the house to appellants with the object of interesting them in the purchase thereof, for a home. Appellees exhibited to appellants the items in question, explained their care and operation, and their conveniences and advantages. The gas furnace was properly attached and used for heating the house. The incinerator was attached in the usual manner with outlets to the flues and must have operated either by gas or electricity and been properly connected, or otherwise it would not have burned the garbage placed therein and then automatically shut itself off after performing such service. The water softener was attached to the plumbing system of the house and all water passed through it. The electric light fixtures were attached to the walls and ceilings.

An architect was secured to prepare the plans. The house was designed and constructed with proper provisions made in the plans for the installation of the items in controversy herein. Appellees testified that they expected to make this their permanent home at the time it was built. These facts indicate an intention on the part of the appellees to make the items in controversy permanent fixtures, and integral parts of the house; but irrespective of these facts, it is not disputed that they were embraced in the Prudential mortgage and that the mortgage money was used to pay for them.

Property once becoming subject to a mortgage indebtedness remains subject to such indebtedness until

duly released therefrom. When appellants purchased the premises, appellees had already conveyed them to the receiver, and were then occupying the property as any other tenant might occupy the same. The appellants purchasing the property subject to the mortgage indebtedness were entitled to receive the premises as mortgaged, and without any impairment of the value of same and without any interference on the part of appellees with any of the property to which the mortgage had attached.

The appellees in the beginning were only vested with an equity of redemption. This they conveyed to the receiver of the bank, and in doing so they divested themselves of all rights in all of the property pledged as security for the mortgage indebtedness. We do not believe that it can be urged that the items in controversy herein were not a part of the mortgaged property. Nothing appears in the record to change the status of these items, after the giving of the Prudential mortgage. Appellants in purchasing the equity of redemption from the receiver, are entitled to receive same in full measure as such rights existed at the time they were conveyed by appellees to the said receiver.

The trial court erred in dissolving the temporary writ with reference to the water softener, electric refrigerator, incinerator, and such electric light fixtures as were attached to the walls or ceilings (not including floor lamps or table lamps, or other electric appliances that are attached to electric outlets by cords). Accordingly this cause is reversed and remanded with directions that the decree herein be modified to include the above mentioned items of water softener, electric refrigerator, incinerator, and such electric light fixtures as are attached to the walls or ceilings; and that the appellees be permanently enjoined and restrained from interfering with the right of possession and the enjoyment of appellants thereto.

*Reversed and remanded with directions.*