Chicago Title and Trust Company, Plaintiff, v. Jennie Waldman et al., Defendants.
Modern Woodmen of America, Appellee, v. Frank Fishman, Appellant.

Gen. No. 38,856.

Opinion filed December 30, 1936.

BERNARD J. BROWN, of Chicago, for appellant.

SOLOMON P. RODERICK, of Chicago, for appellee; MICHAEL B. RODERICK, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

In a foreclosure proceeding then pending in the superior court, Modern Woodmen of America, hereinafter referred to as petitioner, became the purchaser at a master's sale of the Granville Apartment Hotel in Chicago. After the master's certificate had issued, petitioner invoked the court's jurisdiction to determine whether certain gas ranges, mechanical refrigerators and inador beds contained in the hotel were part of the realty purchased by petitioner. Frank Fishman, hereinafter referred to as respondent, claims to have acquired title to the personal property and furniture contained in the hotel, including the gas ranges, refrigerators and inador beds. The petition and Fishman's answer were referred to a master, who found that the court had jurisdiction to entertain the petition, and recommended a decree adjudicating the items in question to be part of the realty. Exceptions to the master's report were overruled, and a decree was entered in accordance with the master's findings and recommendations. This appeal by respondent followed.

The Granville Apartment Hotel is located at 6241 N. Winthrop avenue, Chicago. It is a so-called kitchenette apartment hotel, consisting of 69 units, fully furnished. Each apartment contains an Electrolux ice box, installed in a recess on one side of the kitchen sink, and a gas stove on the other. A cabronette,

which is part of the gas stove unit, is bolted to the gas stove and extends across the other side so as to rest on top of the refrigerator. The cabronette is attached to the building by wooden supports and braces. The refrigerators and stoves are attached to the gas supply pipes of the building, and the refrigerators to the water supply, as well. The inador beds are bolted to doors in the apartments, through the medium of metal braces, and are also attached to the doors in each instance by compensating levers fastened with screws to the door and to the beds.

Petitioner, the owner of $70,000 in bonds of an issue paid off down to $238,000, purchased the property at the master's sale held pursuant to the foreclosure of this bond issue, and received the master's certificate. Chicago Title & Trust Co. was appointed receiver, and May 26, 1930, filed its inventory, which listed the property contained in each of the apartments, including the gas stoves, refrigerators and inador beds.

Paul C. Loeber, Charles E. Fox and Albert W. Swayne, who were known as the Leight trustees, acting on behalf of the owner of the equity of redemption of the premises, had purchased the mechanical refrigerators for the hotel, under a contract dated September 28, 1929, from Utility Appliance Corporation, for the stipulated sum of $11,276, upon which there had been paid at the time of the appointment of the receiver, $4,710.40, leaving a balance due of $6,565.60. The purchase contract provided, among other things, that title and ownership of these refrigerators should remain in Utility Appliance Corporation until the indebtedness was fully paid, and that the equipment should not become a part of the realty. Pursuant to a petition filed May 1, 1930, the receiver was authorized and directed by court order to complete the purchase of these refrigerators by paying the balance of the purchase price in monthly instalments. Payments were made, as provided in the order, and the receiver ulti-

mately obtained a receipt for the purchase from the seller.

November 3, 1933, the Leight trustees filed a petition in the superior court, pursuant to which an order was entered April 13, 1934, finding that the trustees were the owners of the furniture and personal property set forth in the inventory filed by the receiver; that since its appointment the receiver had used the furniture, and that the trustees were entitled to compensation for the use thereof; directing the receiver to pay the trustees $2,400 as reasonable compensation for the use of all of the furniture and personal property, from the date of the receiver's appointment, March 17, 1930, to and including March 31, 1934. The appearance of Solomon P. Roderick, as attorney for petitioner, was filed August 28, 1933, but he received no notice of the application for the entry of the order.

May 5, 1934, an order was entered finding that Frank Fishman, respondent, had on April 3, 1934, purchased from the Leight trustees the furniture and personal property described in the order of April 13, 1934; that the fair and reasonable rental for the use thereof by the receiver was $150 a month, and the receiver was thereupon directed to pay to respondent the sum of $150 a month, commencing April 1, 1934, and so long as the receiver continued in possession of the said property and until the further order of the court. This order was approved by attorneys for the receiver, petitioner, and respondent herein.

September 8, 1934, another order was entered by the court, reciting the previous orders of April 13, 1934, and May 5, 1934, and directing petitioner to pay to respondent, within 10 days, $300 to cover the rental of furniture and personal property for the months of August and September, 1934, and $150 for each and every month that the furniture was used; that petitioner "deliver possession to said Frank Fishman on or before the first day of January 1935, of all of

the furniture and personal property hereinbefore referred to and specifically described and mentioned in the inventory of said Chicago Title & Trust Co.''; and that respondent have access to and use of the elevators of the hotel for the removal of his furniture and personal property. This order was likewise approved by attorneys for petitioner and respondent.

Petitioner entered into possession of the hotel on or about July 12, 1934, pursuant to the filing of a bond for that purpose, and the receiver was discharged. January 25, 1935, petitioner initiated the proceeding which is the subject of this controversy, by filing its petition which set forth in substance the foreclosure proceeding, the purchase of the Electrolux ice boxes, the entry of the various orders hereinbefore specified, the purchase of the premises at the foreclosure sale by petitioner, and its entry into possession of the hotel premises. Petitioner alleged that it had discovered among the items listed in the receiver's inventory the gas ranges, the refrigerators and inador beds, and averred that these items are permanently attached to the realty, are fixtures and not personal property, and requested an order defining and specifying that the items in question are permanently attached to the realty as fixtures and not subject to removal from the premises. Petitioner also asked for vacation or modification of the orders hereinbefore set forth, and for such other relief as the court might see fit to allow. This petition, together with Fishman's answer thereto, were thereafter referred to a master, who, after an exhaustive hearing, found in favor of petitioner and recommended an order or decree in its favor, which the chancellor entered accordingly.

As ground for reversal respondent relies principally upon the following propositions: (1) that the orders of April 13, May 5 and September 8, 1934, were final orders, and the court was without jurisdiction to mod-

ify, vacate or set them aside, after the expiration of thirty days; (2) and that the orders of those dates are *res adjudicata* of the question whether the items mentioned in the receiver's inventory are personal property or realty.

As to the first point it is argued that the foreclosure had proceeded to a sale, the receiver had been discharged, the purchaser at the sale was in possession of the property, the funds realized from the sale had been distributed by the master and the period of redemption had expired; that nothing remained for the court to do in connection with the original bill to foreclose, and the court therefore had no jurisdiction to enter any order on the petition in question. While it has been generally held that a decree of foreclosure and sale is a final order, it does not necessarily follow that the court lacks jurisdiction to enter supplemental orders necessary to carry out its decree. It was so held in *Eggers v. Adler*, 248 Ill. App. 118, where the question arose as to whether the court had jurisdiction to entertain a cross-bill, the term of court at which the original decree of foreclosure was entered and the master's report of sale approved and confirmed having expired. It was there said that:

"As to undisposed of matters, the jurisdiction of the court would continue until the whole matter is disposed of, although, of course, further proceedings would not be allowed to change or modify in any way the final decree theretofore entered. The jurisdiction of the court of chancery over undisposed of matters does not end at the expiration of the term at which a particular final decree may be entered. We think the court was not without jurisdiction, and that the order was equitable and just, and it is affirmed."

In *Chicago Title & Trust Co. v. Bamburg*, 278 Ill. App. 1 (reversed by the Supreme Court on other grounds) the jurisdiction of the court was similarly

challenged, and in discussing the question the court said (p. 12):

"It is the general rule, as appears from the cases cited in the briefs, that the limitation of control of the court to the term at which the decree was rendered does not apply to the provisions inserted for the purpose of carrying the decree into effect. *Sterling Nat. Bank v. Martin,* 213 Ill. App. 566. To the same effect are *Mariner v. Ingraham,* 230 Ill. 130, and *Totten v. Totten,* 299 Ill. 43."

In the *Totten* case, 299 Ill. 43, the decree provided for the payment of certain money found due under a warranty deed which was held by the decree to be a merger. After prosecuting an appeal from the decree, which was affirmed, a petition was filed in the circuit court to extend the time within which to pay the sum specified in the decree, and the court granted the extension. It was there contended that the chancellor was without jurisdiction of the subject matter and had no authority to extend the time for payment, because the term at which the original decree was entered had expired. It was held that while usually courts of equity have no power, after final decree, to amend, modify or alter the principles of their decrees, they retain jurisdiction and power to control the time and manner of the execution of their judgments and decrees.

The principle enunciated in the foregoing decisions is fully discussed and approved in 10 Ruling Case Law, p. 567, sec. 355, under the heading "Bill to Effectuate Decree," where it is said:

"When an irreversible, unreviewable, and unimpeachable decree has been finally obtained, numerous contingencies may yet arise to prevent the party who is entitled to enjoy the benefit of the decree from obtaining the fruits of it; and under certain conditions, such a party is entitled to maintain a bill to carry the

decree into effect. Such a bill is a supplemental bill, founded on new matter arising after the entry of the decree. The power of the court of chancery to entertain a bill to enforce and carry into effect a prior decree is one of its original and undoubted powers, and it is well settled that a court of equity has jurisdiction to carry into effect its own orders, decrees, and judgments, which remain unreversed, when the subject matter and the parties are the same in both proceedings. The frequency with which such bills have been entertained is possibly due, in a measure, to the fact that formerly the ordinary legal process by writ of execution available for enforcing judgments could not be used to enforce decrees, and consequently the chancery court was largely left to its own resources to enforce its decrees. The supplemental bill, after decree, is not infrequently resorted to by the vendee or transferee of property, the title to which has been the subject of prior litigation. By this means the transferee gets the effectual benefit of the previous decree without being compelled to go to the expense of an entirely new litigation.''

In the instant proceeding the original decree of foreclosure directed a sale of the property by the master, and petitioner became the purchaser at the sale. It thereby acquired, not only the real estate involved with the improvements thereon, as described in the certificate of sale, but also ''all improvements and appurtenances thereto attached or belonging, including all . . . ranges, . . . and all other fixtures'' contained in the premises. When some time later petitioner ascertained, as it states in its petition, that the refrigerators, ranges and inador beds were attached to the premises, and learned that an adverse claim thereto was made by respondent, it certainly had the right to invoke the court's jurisdiction to hear and determine whether or not these items belonged to the realty,

and, if so, to enter a supplemental order or decree protecting petitioner against the adverse claimant and safeguard the property which petitioner had purchased at the master's sale. We think this situation comes squarely within the authorities holding that the court may, after the term in which the final decree is entered, make all orders necessary to give effect to its decree. The order appealed from merely determined that petitioner had purchased these items with the real estate and was entitled to be possessed thereof as against the claims of respondent. Circumstances may, and frequently do, arise in which the purchaser at a foreclosure sale may claim that items attached to the realty as fixtures became part of the realty, and the mere fact that the foreclosure proceeding itself had been terminated and a certificate issued ought not to preclude the purchaser from invoking the court's jurisdiction to protect him in a purchase made at the court's direction and under the court's decree.

Certainly, so far as the mechanical refrigerators are concerned, respondent has no claim to them whatsoever. These refrigerators were purchased by the Leight trustees, on behalf of the owner of the equity, from the Utility Appliance Corporation, under a conditional sales contract, and when the receiver went into possession of the hotel he was directed by the court to carry out the terms of the purchase contract and pay, from the income of the property, the unpaid balance. The receiver complied with this order and thereby acquired title to the refrigerators from the Utility Appliance Corporation. The Leight trustees had never acquired title, because the conditional sales contract specifically reserved title to the ice boxes in the seller, and when the contract of purchase was completed by the receiver the estate became the owners of the ice boxes. Since the Leight trustees never owned the refrigerators, they could not have sold or

conveyed any better title thereto to respondent than they themselves had. It logically follows that respondent, although he purchased the personal property and furniture contained in the hotel from the Leight trustees, never acquired title to the refrigerators.

Under respondent's second point it is urged that by the orders of April 13, May 5 and September 8, 1934, the court found that the Leight trust was the owner of all the personal property and furniture mentioned in the inventory, and that the ice boxes, stoves and inador beds were necessarily included. However, these orders were general in their character. They were entered pursuant to petitions which sought to fix the rental value of these chattels while the property was in possession of the receiver. The title to real or personal property was never an issue under these petitions. It did not become an issue until petitioner herein invoked the court's jurisdiction, after it assumed possession of the hotel, to determine whether the items in question were personalty or realty. Respondent relies on the language employed in these various orders which describes the personal property and furniture as that ''mentioned in the inventory,'' but we think this language refers only to items which were actually furniture and personal property, and does not necessarily include the entire contents of the inventory. At best, the inventory was only a clerical compilation filed by the receiver and was binding on neither the petitioner nor the respondent, so far as it had reference to a classification of realty and personalty, and there was no judicial determination by these orders as to what items in the inventory constituted personalty and what was real property.

It was pointed out on oral argument, and it is argued at great length in petitioner's brief, that when Roderick approved the orders in question he had never seen the inventory and did not know that it included

the items in controversy. The inventory had been taken from the court files, and, after many months, was found in the possession of respondent's counsel, who had it in his office, and access thereto could not be had by any of the other parties to the proceeding. That seems to us a plausible explanation of the approval of these orders.

It appears from the record that respondent ultimately removed all the personal property and furniture from the hotel, and petitioner was required to refurnish the various apartments. The respondent had purchased these chattels from the Leight trustees for approximately $2,500, and he received substantially that much from the receiver and petitioner while they were in possession of the premises, by way of rental for the furniture. The value of the refrigerators, ranges and inador beds, when purchased, approximated some $35,000, and constituted a valuable part of the hotel property. The hearing of the master discloses that the items in question were built into the apartments in a special space provided for that purpose, and attached to the building in such a way as to constitute fixtures, and became a part of the realty. (*Chappel v. Burwell*, 273 Ill. App. 348, 352; *Guardian Life Ins. Co. v. Swanson*, 286 Ill. App. 278; *Lyle v. Rosenberg*, 192 Ill. App. 378.) The master's findings are not challenged, and the only reasons urged for reversal are the two propositions hereinbefore stated and discussed. Holding as we do that the court had jurisdiction and that the orders of April 13, May 5 and September 8, 1934, were not an adjudication of the classification in the inventory of items of realty and personalty, it follows that the supplemental decree or order of the superior court should be affirmed. It is so ordered.

*Affirmed.*

JOHN J. SULLIVAN, P. J., and SCANLAN, J., concur.