Fay Riddlesbarger, Appellant, v. Rufus Riddlesbarger, Appellee, Lanteen Laboratories, Inc. et al., Defendants.

## Gen. No. 45,048.

Heard in the second division of this court for the first district at the February term, 1950. Opinion filed June 2, 1950. Released for publication June 15, 1950.

ARTHUR ABRAHAM and RALPH J. GUTGSELL, both of Chicago, for appellant.

ECKERT, PETERSON & LEEMING, of Chicago, for appellee; TOM LEEMING and JOHN R. PORTER, both of Chicago, of counsel.

Mr. Presiding Justice Friend delivered the opinion of the court.

Rufus and Fay Riddlesbarger were married on July 18, 1919 in the City of Chicago. Two daughters were born of said marriage. After November 1922, the parties lived together in Chicago continuously as husband and wife until February 1930. In January 1932, as the result of threats, Fay Riddlesbarger was compelled to accompany her husband to Aurora, Illinois, where Riddlesbarger filed a complaint for divorce on the ground of desertion, and by means of perjured testimony, obtained a divorce from his wife, without allowing her to obtain legal advice or participate in the proceeding. The facts relating to that proceeding are fully set forth in our opinion, *Riddlesbarger v. Riddlesbarger*, 324 Ill. App. 176, and need not be repeated here.

Later, after consulting counsel, Mrs. Riddlesbarger filed a complaint for divorce against her husband in the circuit court of Cook county upon the grounds of desertion and adultery. At the close of her evidence, defendant's motion for a finding in his favor was allowed and the complaint was dismissed for want of equity. The chancellor who heard the case stated, in a lengthy written opinion, that Mrs. Riddlesbarger was induced by threats of her husband not to interpose any defense to his bill for divorce filed in Aurora; that Riddlesbarger obtained the divorce by making false representations in his complaint, and by means of false testimony that he was a resident of Aurora practiced a flagrant fraud upon that court; and that if the true facts had been divulged, the court "would have immediately held as a matter of law that the court did not have jurisdiction of the person of said Riddlesbarger, and consequently would have promptly dismissed said action for want of jurisdiction"; but the chancellor held that, because of her laches and

participation in the Aurora decree after its entry, Mrs. Riddlesbarger was estopped by her conduct *in pais* from asserting any rights she may have had because of the claimed invalidity of the divorce decree. We reversed the decree (324 Ill. App. 176), holding that the doctrine of estoppel is called into being for the prevention of fraud and should never be exercised in aid of fraud, and remanded the cause with directions to overrule defendant's motion for a finding in his favor, and for further proceedings.

The cause thereupon proceeded to hearing in the circuit court, and resulted in a decree for divorce in favor of Mrs. Riddlesbarger. Questions of property rights between the parties, solicitors' fees and expenses were referred to a master, and after extensive hearings the master recommended that Mrs. Riddlesbarger be awarded $100,000 alimony in gross, $30,000 solicitors' fees and $1,250 for auditor's expenses. The report was approved, and these provisions were incorporated in a decree from which Riddlesbarger appealed. We held (336 Ill. App. 226, Abst.) that the specific circumstances justified an allowance in gross because the uncontradicted evidence disclosed that Fay Riddlesbarger had made a substantial contribution in cash that created her husband's business (Lanteen Laboratories, Inc.) and made the existence thereof possible; that she had initially subscribed $12,000, obtained from her mother, for shares of the capital stock, and was a director of the company; that it was obvious from the record that there must be an allowance in gross if Mrs. Riddlesbarger was ever to receive any alimony at all, because a periodic allowance could not be collected for the reason that since the service of summons in that proceeding defendant had continuously lived on his ranch in Hereford, Arizona, out of the jurisdiction of the court, and the contempt process of a court of chancery, ordinarily relied upon to col-

lect a periodic allowance, would have been entirely useless inasmuch as defendant remained outside the jurisdiction of the court, refused to comply with an order requiring him to appear for examination, and there was no practicable means for enforcing it. It further appeared from the undisputed evidence that Riddlesbarger had been siphoning his assets out of the State of Illinois. Pending the second appeal he set up a trust to which he conveyed 600 shares of the Class A common stock of one of his companies, Lanteen Laboratories, Inc., of the admitted value of $30,000, had sold to the corporation and had taken out cash for 1038 shares of Class A stock of the admitted value of $51,900, and transferred 500 shares of the Class A common stock of the admitted value of $25,000 to Verma Riddlesbarger, whom he had married after the first decree was entered. The facts disclosed on that hearing indicated that he was actually withdrawing corporate income, and could continue to withdraw, if he chose, any further part of the corporate income allocable to his stock holdings. Riddlesbarger was a man of considerable means. The book value of his stock holdings in Lanteen Laboratories, Inc., as of December 31, 1944, was found to be $535,769.52, and in addition to that the book value of the stock of Lanteen Realty Company, another corporation under his control, held by him as of the same date was $110,-134.43. His total holdings in these two companies aggregated $645,903.95. We held that, under the circumstances, the award of alimony in gross was proper, and upon the showing made, the allowance of $100,000 was not at all excessive. We further held that the allowance of $30,000 fees for Mrs. Riddlesbarger's attorneys was reasonable, and that the item of $1,250 representing accounting services was necessary and reasonable, and accordingly affirmed the decree of the circuit court in all respects.

After the decree was entered, Riddlesbarger refused to pay the money decree or to file a bond securing plaintiff in the amount of her judgment, despite the circumstance that on May 17, 1947 (the divorce decree was entered in the circuit court April 29, 1947) he filed a notice of appeal from the decree. It thereupon became incumbent upon plaintiff to institute extended proceedings in the circuit court, the general nature and disposition of which may be summarized as follows: (1) on May 7, 1947, Mrs. Riddlesbarger filed a petition to enjoin her husband, Lanteen Laboratories, Inc., and Lanteen Realty Company from transferring on their books any stock standing in the name of Rufus Riddlesbarger, and such an injunction was entered; (2) May 13, 1947, she filed her petition for disclosure wherein she sought to require all defendants to show any pledges, assignments or transfers of certificates of stock from the name of Rufus Riddlesbarger in the several companies, and an order was thereupon entered requiring the various defendants to answer the petition within five days; May 19, a rule was entered upon Riddlesbarger to answer the petition, with which he complied by filing an answer on June 6; (3) July 15, 1947, Mrs. Riddlesbarger filed her petition to enforce the decree, asking for a receiver for Rufus Riddlesbarger, and for an order that she be permitted to examine the books and records of the several corporations; July 17, 1947, an order was entered, appointing Luke D. McCoy receiver of the estate of Rufus Riddlesbarger, and directing the corporate defendants to open their books for inspection by Mrs. Riddlesbarger; and (4) August 19, 1947, Mrs. Riddlesbarger filed her second petition to enforce the decree, praying for appointment of a receiver for the corporate defendants upon the ground that each of them was a mere *alter ego* of Rufus Riddlesbarger. Various proceedings were thereafter had on the petition before JUDGE

111

COURTNEY, another chancellor of the circuit court, at the conclusion of which he indicated that if Riddlesbarger did not file a supersedeas bond within two weeks he would appoint a receiver for the corporate defendants. As a result of these proceedings Riddlesbarger did, on September 23, 1947, file in the Appellate Court, where the appeal was then pending, a supersedeas bond in the usual form in the penal sum of $150,000.

After the appeal had been taken from the decree of divorce entered in the circuit court, Mrs. Riddlesbarger's attorneys were required to and did prepare an exhaustive brief in the case, involving many questions of law, and defended the appeal to its conclusion. Upon affirmance of the decree, Riddlesbarger filed in the Supreme Court of Illinois his petition for leave to appeal from the judgment of the Appellate Court, and Mrs. Riddlesbarger's attorneys were required to file an answer to his petition. On March 22, 1949, the Supreme Court denied Riddlesbarger's petition for leave to appeal (336 Ill. App. xv), and ten days thereafter, on April 1, 1949, Riddlesbarger paid the judgment awarded in the decree of April 29, 1947, and Fay Riddlesbarger simultaneously executed and delivered to him a satisfaction of judgment which on the same day was entered by the clerk of the circuit court.

Having been put to the necessity of continuing to retain counsel throughout the protracted litigation hereinbefore related following her decree of April 29, 1947, Mrs. Riddlesbarger on May 23, 1949, filed her petition in the circuit court, seeking an allowance for disbursements and attorneys' fees incurred in the attempted enforcement of the decree and for the defense of the appeal. She alleged that in connection with the proceedings to enforce the decree and with the defense of the appeal, her attorneys were required to and did actually expend 587 hours, and attached to

112

her petition an itemized time record beginning May 1, 1947 and continuing to March 2, 1949, as well as an itemized statement showing that she had over that period of time incurred actual expenses of $553.24.

May 23, 1949, the court granted her leave to file the petition instanter, at the same time allowing Riddlesbarger to file his special appearance, and set the matter for hearing on June 15, 1949. In his appearance and motion Riddlesbarger set forth various reasons for challenging the jurisdiction of the court to entertain the petition. The gist of his pleadings was that the jurisdiction of the court was exhausted when, on April 1, 1949, its judgment was satisfied in full. Counsel for the respective parties evidently submitted briefs, because the final order so states, and on October 18, 1949, the court, holding with Riddlesbarger's contention, sustained his motion and dismissed Mrs. Riddlesbarger's petition for want of jurisdiction. The instant appeal followed.

█ Riddlesbarger expressly admits in his brief and conceded on oral argument that the jurisdiction of the court to allow fees for services rendered by Mrs. Riddlesbarger's attorneys in the defense of the appeal and in the enforcement of the decree was not divested by the entry of the decree or by the order of the Supreme Court denying leave to appeal. The statute on divorce (Ill. Rev. Stat. 1949, ch. 40, par. 16 (sec. 15) [Jones Ill. Stats. Ann. 109.183]) so provides, and it has been construed to afford the allowance of fees and expenses in cases where it was necessary to defend a decree and enforce payment thereof. *Buehler v. Buehler,* 321 Ill. App. 630 (Abst.), 318 Ill. App. 640 (Abst.), 318 Ill. App. 641 (Abst.), and cases cited therein. Counsel say that the order of affirmance by the Appellate Court and the order of the Supreme Court denying leave to appeal had the effect of putting the case back in the trial court where jurisdiction had

been reserved for the purpose of enforcing the decree, and that "certainly, at that stage of the proceeding, the trial court had jurisdiction of the parties and subject matter to whatever extent was necessary to enforce the decree. If plaintiff had filed her petition for an allowance of fees at that point in the litigation, there would be no question about the trial court having jurisdiction," but, we are told, "the point is that plaintiff did not elect to bring the question before the trial court until after the only judgment in the case was satisfied." In view of these admissions, the issue is narrowed down to the question whether or not the well-settled jurisdiction of the court to allow fees for services rendered after entry of the decree in defense of the appeal and the enforcement of the decree is in any way divested by the circumstance that the petition for the allowance of those fees was filed after the hasty payment and satisfaction of the money judgment contained in the divorce decree.

As to this issue, Riddlesbarger argues that the subjects covered in the case were the divorce issue itself, alimony, fees and expenses; that "possibly not all the expenses had been included, possibly plaintiff would have preferred more alimony, and possibly plaintiff could have used to advantage an additional allowance for attorney fees, but plaintiff failed to present such additional questions and, therefore, the satisfaction of judgment ended the litigation." Several cases are cited and discussed in support of this contention, none of which, however, involve divorce proceedings except *Brochier v. Brochier*, 17 Cal. 2d 822, 112 P. 2d 602. In that case the trial court entered a contempt order after satisfaction of judgment had been made of record in a divorce proceeding, and it was held that "the general principle is well settled that a satisfaction of judgment is the last act and end of the proceeding." The court quoted from *Salveter v. Salveter*, 11 Cal. 2d 335, 53 P. 2d 381, to the effect that " 'payment of a

114

judgment satisfies it and extinguishes it,' '' and also cited *In re Baby's Estate,* 87 Cal. 200, 25 Pac. 405, where it was said: ''When a judgment has been satisfied, it has passed beyond review, for the satisfaction thereof is the last act and end of the proceeding. [Citing other California cases.] 'Payment produces a permanent and irrevocable discharge, after which the judgment cannot be restored by any subsequent agreement, nor kept on foot to cover new and distinct engagements.' Freem. Judgm. § 466; . . . .'' Riddlesbarger also cites *Union Lithograph Co. v. Bacon,* 179 Cal. 53, 175 P. 464, and *Covell v. Heyman,* 111 U. S. 176, which involved a question of conflict between a state and federal court and in which the court quoted from an opinion in *Wayman v. Southard,* 10 Wheat. 1, as follows: '' ' The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied.' '' We think these cases proceed on an entirely different principle. *In re Baby's Estate* simply holds that where one has taken payment in full satisfaction of a decree, he cannot thereafter appeal from the judgment, and the other California cases announce the doctrine that proceedings will not issue to enforce a judgment where that judgment has already been paid and satisfied. It is difficult to perceive what consolation counsel can derive from the principle announced in the United States Supreme Court cases which hold that the jurisdiction of the court is not exhausted by the rendition of the judgment, nor in the case of *Bates v. Bodie,* 245 U. S. 520, also cited by Riddlesbarger, wherein it was held that since the wife had been allowed and accepted a sum in full settlement and payment of alimony in an Arkansas court, she could not thereafter bring suit in Nebraska and subject Nebraska lands to payment.

■■■ Counsel cite no decisions precisely applicable to the case at bar, but we think that the decision of the issue may be resolved upon other recognized princi-

ples. It is well settled that a supplemental bill may be filed after decree, not only to enforce the decree but to enforce rights of the plaintiff omitted in the original bill or not put in issue by it, or the defense made to it, *so long as the supplemental bill does not seek to impeach or contradict the decree.* 2 Daniell's Chancery Pleading and Practice, 6th ed., p. 1536, n. 6; *O'Hara v. Shepherd,* 3 Md. Chancery Decisions 306; 30 C. J. S. Equity § 427; *Root v. Woolworth,* 150 U. S. 401. The *Root* case, as a matter of fact, extends the practice, provided leave of court is obtained, to allow the filing of a supplemental bill after decree for the purpose of impeaching the decree. If the petition in the case at bar be regarded as a supplementary proceeding, it is plain that the court had jurisdiction to act with or without a prior express reservation of jurisdiction, since plaintiff's petition does not seek to avoid or impeach the decree.

██ It may be conceded that the power of a court of chancery to allow attorneys' fees for services rendered in the enforcement of a decree and in defense of an appeal stems from the Illinois Divorce Statute. *Clubb v. Clubb,* 402 Ill. 390. But the practice and proceedings in divorce cases in Illinois, except as specifically limited by the Divorce Act, are those of courts of chancery, not only in relation to petitions for fees but generally. The Divorce Act so provides (Ill. Rev. Stat. 1949, ch. 40, par. 16, sec. 15 [Jones Ill. Stats. Ann. 109.183]). In the early case of *Bowman v. Bowman,* 64 Ill. 75, the court said that "a bill for a divorce partakes so much of the nature of a proceeding in chancery, that it must be governed, to a great extent, by the rules in chancery cases." Under well-recognized chancery rules it has been held that a crossbill filed after final decree which did not seek to open the decree or disturb any proceeding which had been had in the suit, but was lodged for the sole purpose of set-

116

ting aside a sale of property, was proper. *Chicago Artesian Well Co. v. Connecticut Mut. Life Ins. Co.,* 57 Ill. 424. A similar situation was considered in *Prindeville v. Curran,* 156 Ill. App. 278, where a creditor's bill was filed after the judgment of the original complaint had been satisfied, and the court upheld an order granting complainants leave to file a supplemental bill. In *Ruprecht v. Muhlke,* 225 Ill. 188, a decree of foreclosure was entered, the property was sold, and the proceeds of the sale were distributed to the plaintiff under a bill to foreclose the first mortgage on the property. Subsequently a junior mortgagee filed a petition for the appointment of a receiver, and it was contended that the crossbill was not filed in apt time and should have been filed before final decree, sale and satisfaction of the money judgment under the decree. In discussing this contention, the court noted the general rule that a crossbill should be filed in apt time "which would usually be before final decree," and discussed with approval the *Chicago Artesian Well Co.* decision in the following language: "said cross-bill was not filed with a view to interfere in any way with the operation of that decree, nor did it tend to delay the petitioner in securing his rights under said final decree, hence the cross-bill was regarded as filed in sufficient time." In *Eggers v. Adler,* 248 Ill. App. 118, plaintiff, the holder of a first mortgage, filed a complaint to foreclose, naming as defendants the holder of a second mortgage and the owner of the property. A decree of foreclosure was entered, a sale had, the master filed his report of sale and distribution which indicated sufficient funds to pay the costs, expenses and full amount due the complainant so that the judgment in favor of plaintiff was fully satisfied. Thereafter the second mortgagee filed a crossbill to reduce to the payment of the second mortgage the rents arising during the period of redemp-

117

tion. It was there contended that the court had no jurisdiction of the crossbill because it was filed too late, but the court held otherwise, saying that "as to undisposed of matters, the jurisdiction of the court would continue until the whole matter is disposed of, although, of course, further proceedings would not be allowed to change or modify in any way the final decree theretofore entered. The jurisdiction of the court of chancery over undisposed of matters does not end at the expiration of the term at which a particular final decree may be entered." *Chicago Title & Trust Co. v. Waldman,* 288 Ill. App. 21, is to the same effect.

██ It is conceded by both parties that actually the allowance for fees in the original decree did not include services to be rendered after the entry of the decree. Riddlesbarger's counsel undoubtedly knew the innumerable and extended efforts made by Mrs. Riddlesbarger to enforce the decree before the filing of the supersedeas bond, and of the extended efforts exerted in defense of the appeal. In view of the concession that under the divorce statute of this State, plaintiff was entitled to additional fees for those services, they must have presumed that Mrs. Riddlesbarger would file a petition for those services. Certainly Riddlesbarger did not in any way act to his detriment because the petition was not filed earlier. The Supreme Court having denied the petition for leave to appeal, he had no choice but to pay the judgment which was fully secured by a supersedeas bond. In fact, he would have had to pay the judgment just the same whether a petition for allowance of fees for additional services was then on file. A petition for fees for additional services rendered after the decree would in no way have enabled him to refrain from paying the money judgment, nor would it in any way have enabled him to delay the payment of that judgment.

Riddlesbarger's attitude and conduct after the entry of the decree made the rendition of these services necessary. Mrs. Riddlesbarger had no choice in the matter, and her counsel diligently defended the decree and took all the steps necessary to enforce payment. Under the circumstances it would be an injustice to hold that she should defray these costs and expenses herself. No cases are cited by Riddlesbarger which militate against her right to seek compensation after satisfaction of the judgment. In our opinion the court had jurisdiction to entertain her petition within the scope of the decisions hereinbefore cited and discussed, and it was therefore error to dismiss it for want of jurisdiction. Accordingly, the order of the circuit court is reversed and the cause is remanded with directions that further proceedings be had in consonance with the views herein expressed.

*Order reversed and cause remanded with directions.*

SCANLAN and SCHWARTZ, JJ., concur.