**Jean DeKlade, Appellant, v. Abraham DeKlade, Appellee.**

**Gen. No. 28,525.**

Divorce—*when residence in State for jurisdictional period not shown by evidence.* A complainant for divorce is not shown to have resided in the State for the jurisdictional period of one year before filing the bill, by evidence that she is in the theatrical business, traveling from city to city with the troupe of which she is a member, without any fixed place of abode, that for three years prior to the filing of the bill she was in Chicago on several occasions annually at which times she remained in the city for two or three weeks at a time and always stopped at the same hotel, although she had no regular room therein, that she regarded such city and hotel as her home and on one occasion checked some of her clothing at a public check stand in the hotel during the interval between theatrical seasons, where her evidence is vague and contradictory and not corroborated, and tends at most to prove *animus revertendi* and not *animus manendi.*

DeKlade v. DeKlade, 231 Ill. App. 50.

Appeal by complainant from the Superior Court of Cook county; the Hon. TIMOTHY D. HURLEY, Judge, presiding.   Heard in the second division of this court for the first district at the March term, 1923.   Affirmed.   Opinion filed November 27, 1923.

BEREZNIAK & DITTUS, for appellant.

ROBERT E. CROWE, State's Attorney, for appellee; EDWARD E. WILSON and CLYDE C. FISHER, Assistant State's Attorneys, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

By this appeal, the appellant, who was the complainant in a bill for divorce on the ground of desertion, seeks to reverse a decree of the superior court dismissing her bill of complaint.  The bill alleges that complainant is, and for more than a year immediately preceding the filing of the bill has been, a resident of this State.  The decree finds that this allegation is not sustained by the evidence, and error is assigned on this finding.

From the certificate of evidence it also appears that the court was not satisfied that there was no collusion between the parties.  The bill was filed November 16, 1922.  One day later a paper was filed, signed by the defendant, waiving service of process and consenting to "a default and an immediate hearing." No answer was filed, and no formal order of default was entered, but on November 24, 1922, the court heard the evidence, apparently as a default case. While the decree states that there was service on the defendant by publication, there is no proof of such service in the record, and as but eight days elapsed between the date the bill was filed and the date of the hearing, it is obvious that this recital of the decree is a mistake.  At the close of the evidence, in response to questions of the court, one of the complainant's solicitors stated that before the bill was filed he had sent a

letter to the defendant in New York City, stating that
the defendant's wife had engaged such solicitors to
obtain a divorce on the ground of desertion, that she
claims he had not lived with her for nearly ten years,
that "she does not want anything from you but to be
free," and that "if this is satisfactory, and her state-
ment is correct, kindly sign the inclosed waiver of
service"; that in response to this letter, the defend-
ant signed the paper so inclosed and returned the
same to the complainant's solicitors, who then filed
it in this case the day after the bill was filed. On
hearing this statement of complainant's counsel, the
court asked the State's Attorney to enter his appear-
ance on behalf of the People, which was done. The
State's Attorney has filed a brief in this court in
which both the question of complainant's residence in
this State and the question of collusion are presented
and argued. No brief was filed on behalf of the de-
fendant.

The testimony of complainant regarding her al-
leged residence in this State is very confusing. It is
full of contradictions and conflicting statements. She
testified that she was married to the defendant in
February, 1913, in New York City; that she was then
living in a furnished room in that city and was then,
and ever since has been, engaged in what she calls
"the show business"; that she "travels around with
the show," and that for about five years before the
bill was filed she was with a show called "The Mimic
World," which had its rehearsals in New York City,
and then traveled around the country playing in vari-
ous cities, including Chicago; that when so traveling
around she stopped "at the nearest hotel to the
theatre where the show is," and that when she came
to Chicago she "always stopped at the Grant Hotel."
She said that for eight or nine years she has consid-
ered that place as her home. She has a married sister
living in New York, and her mother and a married

brother live in Boston.  The Grant Hotel is located
in the central part of Chicago, and most of its guests
are "theatrical people."  At the time of the trial,
however, she said she was living at a hotel in another
part of the city "because," she said, "the Hotel
Grant is too far away from where I am playing."  At
that time she had a three-weeks engagement in Chicago,
one week at each of three theaters, and stopped the
first two weeks at the Hotel Grant, and the other
week at the hotel mentioned.  At first, she testified
that she "stayed" at the Grant Hotel three years.
The court asked her:  "What did you do during those
three years?"  She answered:  "I traveled around
with a show all the time."  In further response to
questions of the court, she testified that she first
stopped at the Grant Hotel for three weeks in the
year 1916, and was not there again until 1921, when
she stayed there three weeks; that when her season
ended in 1921 (which she said was in August of that
year, and her sister testified was in April of that
year) she was in New York and "came back" to
Chicago, where she remained for several weeks at
the Grant Hotel, until "the manager said to come to
rehearsals in New York"; and that the next time she
stopped there was "this season, two weeks ago,"—
that is, two weeks before the trial.  Further question-
ing by her counsel brought out the statement that in
August, 1921, she stayed at the Grant Hotel eight
weeks, instead of three.  At first she testified that she
had a room permanently at that hotel, but later she
said she only paid rent for her room when she stopped
there.  She further testified that her sole possessions
consisted of "some clothes and a trunk"; that in win-
ter she left her summer clothes at the Grant Hotel,
and in summer she left her winter clothes there.  The
court asked her what such clothing consisted of in
1921, and where she left it.  She replied that when
she left the hotel in 1921 she checked five gingham

dresses, wrapped in a paper parcel, in the parcel room of the hotel, ''with the boy downstairs,'' whose name she did not remember, and whose appearance she said she could not describe. She testified that she has no relatives in Chicago, and does not know anyone at the Grant Hotel. Her married sister testified that she and her husband are also in the ''show business''; that they live in New York; that she also plays in the ''Mimic World,'' and that when her season ends she goes to New York, but ''when my sister's season ends she comes to Chicago.'' She also testified that her ''present show opened in New York,'' on August 21, 1922; that before that date they rehearsed eight weeks in New York City; and before that she ''believed'' her sister was in Chicago for six weeks ''until we sent for her in June''; and that from January to May of that year ''we were on the road.''

The foregoing was substantially all the evidence offered by the complainant upon the question of her residence in this State. The court thereupon directed that a subpœna be issued to bring in the manager of the Hotel Grant, and the hotel register for the last three years. The assistant manager responded and brought with him some loose sheets from the hotel register purporting to cover the years 1921 and 1922. One of such sheets showed that complainant registered there on November 5, 1922, in company with another woman from the same show, that they wrote their names on such sheet, and under the heading ''Place of residence,'' wrote the words: ''Mimic World.'' The other sheets disclosed nothing, so far as the record shows. The assistant manager then testified that he knew complainant as a guest in his hotel, but ''knew nothing about her except that she is in the show business and stopped with us during the time of her engagements in Chicago''; that he knew ''she is working every time she stops there,'' and did not know of any time she stopped there ex-

cept during such engagements; that she had no permanent room in the hotel; that he recalled seeing her there in November, 1922, and knew that she had been a guest there at other times, but just when, or how many times, he did not remember; that he had no arrangement with her to store, or keep for her, any of her baggage or personal belongings while she was not at the hotel, and never knew of her having checked such belongings there. On cross-examination by complainant's counsel, he said that anyone, whether a guest or not, could check a parcel in the parcel room, where it would be kept for "thirty days or a year," if not called for.

The divorce statute of this State provides in terms that: "No person shall be entitled to a divorce * * * who has not resided in this State one whole year next before filing his or her bill." [Cahill's Ill. St. ch. 40, ¶ 3.] In *Way v. Way*, 64 Ill. 406, it was held that under this statute such residence is made "a prerequisite to the existence of the right to file a bill"; that proof that a complainant has such residence in this State for the prescribed time is essential to give the court jurisdiction; and that a transient visit to a place in this State will not make a person a resident within the meaning of this statute, but that the legislature intended that a residence of a permanent nature must be shown, quoting the words of Chancellor Kent that there must be a residence "with a bona fide intent, with the *animus manendi*." Evidence to the effect that a complainant has stopped at a hotel in a particular city "off and on" for over three years, sometimes two or three weeks at a time, and several times each year, has been held to be insufficient to show such a legal residence as the statute requires. (*McShane v. McShane*, 45 N. J. Eq. 341; *Steele v. Steele*, 26 N. J. Eq. 85.) This is the character of evidence that was shown in the present case; and nothing further was shown except the assertion of complainant that she always considered Chicago her home, and

that she had checked some of her dresses in the parcel room of a hotel in this State when she left the hotel in 1921. While in such cases the intention of a party is always given large consideration, mere claimed intention, without acts to support it, is not controlling. (*Bradfield v. Bradfield,* 154 Mich. 115.) There is no evidence in this case of any act tending to support complainant's alleged intention to make her home in Chicago, or to remain here longer than her theatrical engagements require, unless her statement that she checked five gingham dresses in the parcel room of the Grant Hotel, when she left there in the spring or summer of 1921, can be so considered. The evidence of the hotel manager discredits the truth of this statement. But, if it was true, it has no more probative force than if complainant had placed the same dresses in a public storage warehouse. Such an act might tend to prove an *animus revertendi* but not an *animus manendi.* After a careful consideration of the evidence, we are unable to say that the chancellor was not justified in finding from such evidence that complainant has no legal residence in this State within the meaning of that term as used in our statute.

Counsel for complainant rely upon the cases of *Albee v. Albee,* 141 Ill. 550, and *Bentley v. Bentley,* 214 Ill. App. 660. In the first of these cases the complainant was the only son of a Vermont farmer, and he worked and lived upon his father's farm. He married and took his wife home to live with his parents. The wife and her mother-in-law disagreed, and she left, telling him she would not return until he provided a home elsewhere, which was not done. About two years later, he came to Chicago and worked here for a relative. He testified that he intended at that time to make Chicago his residence. After being here about two months, however, he was taken sick and went back to his father's home in Vermont, where he remained ten months, and then returned to Chicago.

Soon after his return he filed his bill for divorce.   On these facts the Appellate Court found that he was a "mere sojourner here till his divorce might be obtained" and also found that the alleged desertion was his desertion and not that of his wife.   The Supreme Court affirmed the judgment of the Appellate Court upon the question of desertion, but stated, in the opinion filed, that it was unable to concur with the Appellate Court in its finding from the evidence that he was not a resident of Chicago.   The Supreme Court there said that the complainant's testimony that he came to Chicago with the intention of becoming a resident was not contradicted by any other witness, nor overcome by circumstances giving rise to mere suspicions that his testimony in this respect was false. The court added, however:   "If his residence here were merely colorable, it would be insufficient to give the courts of this State jurisdiction to entertain his bill for divorce."  .In the second of the cases last above cited, the opinion filed shows that in that case the evidence was to the effect that for eight years prior to the filing of complainant's bill "he had retained and paid for his room here throughout the year and kept part of his personal effects therein, and that he had no other place of residence," and that his testimony in this regard was corroborated by the person from whom he rented said room, and by another witness.   There is no such testimony in the present case.   Here the complainant had no permanent room in the hotel which she claims as her residence, and her claim in that respect is wholly uncorroborated, not to say disputed, by the hotel manager.   So, also, the case of *Albee v. Albee, supra,* presents a wholly different state of facts from the facts of this case, and we are of the opinion that neither of such cases can be considered as an authority for the position of complainant's counsel.

Upon the question of collusion but little need be said.   The decree does not find that there was collu-

sion, and as what we have said disposes of this appeal, it will not be necessary to determine whether the facts shown in this case, regarding the manner in which the defendant's appearance was obtained, constitutes collusion within the meaning of the statute.

The decree of the superior court will be affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.