FRANCES DELORES HARDING, Plaintiff-Appellant, *v.* JAMES HENRY HARD-
ING, Defendant-Appellee.

(No. 12177;

Fourth District—April 10, 1974.

Wright, Young and Wright, of Danville, and Greaves and Erwin, of
Champaign (M. Eugene Wright and Burt Greaves, of counsel), for ap-
pellant.

Gunn, Hickman, Kesler, Jenkins & Vogel, Ltd., of Danville (John B.
Jenkins, of counsel), for appellee.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

The circuit court of Vermilion County granted the plaintiff-wife a divorce on the grounds of extreme and repeated mental cruelty and made a disposition of property including periodic alimony payments. In this court the only issues relate to the property. The plaintiff contends (1) that the trial court erred in failing to find special circumstances warranting a transfer of the property in the defendant's name to the plaintiff, (2) that the alimony award and disposition of property both as to structure and amount are inadequate and unprotected, and (3) that the court erred in changing the custodian and transferring to a bank in Danville as trustee property designated for the benefit of the children under the Illinois Uniform Gift to Minors Act. Ill. Rev. Stat. 1971, ch. 3, par. 531 *et seq.*

The parties were married in 1950 and five children were born of this marriage: A son, 20; a daughter, 18; a son, 14; a daughter, 12; and a son, 10. The oldest son attends school away from home and the other four children live and reside with their mother in the marital residence in Danville. The wife is unemployed; the husband is a doctor practicing in Danville. Following the schooling of the husband, they returned to Danville to establish the defendant's medical practice and at that time had accumulated only a small amount of household goods and an old car. At the time of the divorce, the marital residence was held in joint tenancy and consisted of a five-bedroom, two-story house, having five baths or half-baths, a kitchen, recreation room, dining room, living room, finished basement, a swimming pool, and surrounding grounds fully landscaped. In addition, the doctor was drawing a salary of $48,000 and had additional income as well as quite a lot of additional property.

The judgment of the trial court allowed the wife the sum of $1,200 per month alimony and $200 per month for each of the minor children for their support, allowed the defendant to take the income tax deductions for such minor children, and gave to the wife the marital residence, and the household goods, valued in the neighborhood of $40,000 to $45,000, except certain personal belongings of the husband. The court also gave to each his or her own life insurance policies, and provided that life insurance on the defendant's life should be continued in full force and effect at his own expense with the minor children of the parties designated as primary beneficiaries and that such policies should not be encumbered without a further order of the court, that the defendant should pay all medical and dental expenses reasonably incurred for the benefit of the minor children with some supervision on his part, required the defendant to pay $8,750 for the plaintiff's attorney fees and costs of

some $358.75, gave to the wife the marital residence valued at $90,000 then held in joint tenancy subject to present lien of $74,000, gave to the defendant the Medical Arts Building valued at $50,000 then held in joint tenancy subject to liens and indebtedness of $31,000, and excused each party from any and all debts or liabilities and directed that all funds, property and contract rights held by either party for the benefit of the five children under the Illinois Uniform Gift to Minors Act (Ill. Rev. Stat. 1971, ch. 3, par. 533) be transferred to the First National Bank of Danville as trustee or custodian and to be used for the college or vocational education of the children of the parties.

■■■ In *Debrey v. Debrey*, 132 Ill.App.2d 1072, 270 N.E.2d 43, this court had occasion to discuss the circumstances under which a court may transfer property from one party to another, and we discussed the circumstances under which one party may seek a conveyance of property titled in the other where special circumstances and equities exist. In that case we observed that there was no evidence indicating or suggesting that the plaintiff made any contributions to the acquisition of or the improvement of the marital home, other than the services normally rendered by a wife. The facts in the case at bar are totally different and poles away from the special circumstances set forth in *Ylonen v. Ylonen*, 2 Ill.2d 111, 117 N.E.2d 98, or to the circumstances related in *Klebba v. Klebba*, 108 Ill.App.2d 32, 246 N.E.2d 681, where the appellate court held that there was no abuse of discretion in not awarding property or money in gross in lieu of alimony. In the instant case, it is clear from the record and the plaintiff's testimony that she contributed no money earnings or effort toward the acquisition or development of any of the real estate properties owned by either of the parties or any other assets titled in the defendant's name. This record falls far short of establishing any special equities in either the real estate or the other property titled in defendant's name. The trial court found that the equities in the Medical Arts Building and in the home were substantially the same. These were the two properties held in joint tenancy. His decree provided and his findings noted that these equities pretty well balanced each other off and that he was ordering these conveyances on the theory of a gift between husband and wife. The trial court's opinion indicated that considerable heat and animosity had been engendered between the husband and wife and we do not think that the best interests of the parties would warrant a decree which would permit that heat to continue to flare in a joint ownership of any property. We see nothing in this record creating or establishing special equities of the wife in the property solely owned by the husband. In like manner, we see nothing in this record which warrants this court in conveying property to the wife in lieu of alimony.

Indeed the plaintiff concedes that the usual and proper procedure is to award alimony in periodic payments so that the needs of the wife and family may be weighed in connection with the abilities of the husband to pay. Awarding periodic alimony remains within the control of the court and it should be only where the record shows that periodic payments are not feasible or practicable that the court should depart from the rule of need coupled with the ability to pay. *Honey v. Honey,* 120 Ill.App.2d 102, 256 N.E.2d 121, and cases cited therein.

■■ In *Hoffmann v. Hoffmann,* 40 Ill.2d 344, 239 N.E.2d 792, the supreme court noted that the awarding of alimony is a matter reposing within the sound discretion of the trial court and in Illinois a trial judge can award either permanent periodic alimony or alimony in gross, and that the trial judge's discretion will not be disturbed in that regard unless it amounts to an abuse of discretion or is contrary to the manifest weight of the evidence. The plaintiff's primary attack to the allowance of periodic alimony is that the defendant's ability or desire to continue with that method of payment is unpredictable and gives no assurance to the plaintiff that he will continue to make such payments. To protect against that contingency so far as a court can, the trial court impressed a lien upon the property of the defendant to ensure his performance, so far as it is within the power of the court to do so. Most, if not all, of defendant's property is pledged to secure indebtedness. To transfer that property to the plaintiff subject to such indebtedness is of questionable wisdom on this record. The evidence establishes that the plaintiff had no experience in the investment and management of any large sums of money or property. When her testimony disclosed a total lack of knowledge of the custodial account of her children, the assets that were in it or what was being done with it, alimony in gross becomes suspect. The trial court expressed his concern in these words: "The court was disturbed by the events that went on after the separation as to the financial stability of the plaintiff for awarding a lump sum alimony. She testified that she would require $48,000 per year in order to maintain herself and the children in the manner to which she was accustomed. Yet the entire family, including the husband, spent approximately $28,000 per year in 1970, including fixed charges such as mortgage payments, taxes, life insurance, etc. She likewise contends that he has available in excess of $56,000 to $60,000 annually which he has consistently reported in his income tax return. The provisions of the decree presently will require an outlay by the defendant of approximately $25,000 a year, exclusive of medical costs for the children or premiums on his life insurance program. Thus, the plaintiff and her children will receive well in excess of one-half of the defendant's income after taxes.

The plaintiff likewise contends that the trial court had no jurisdiction to limit the expenditures of the custodian of the money provided under the Illinois Uniform Gift to Minors Act to education alone. That issue is not before this court. The plaintiff in her complaint asked that the defendant be removed as a custodian and all the custodial assets and funds be transferred to her as successor custodian. The issue of the custodian was therefore squarely before the court inasmuch as the defendant likewise asks that she be removed and the administration of the custodial funds be awarded to him. The court granted neither, but designated a bank as trustee, and its proper administration awaits another day and hopefully without another courtroom. The argument that the bank designated was one used by the defendant and thus the bank will acquiesce in the defendant's request as to the expenditure of the funds reflects no credit upon the trust department of that bank and indicates the extent to which the heat and animosity between the parties has warped an objective view of the property interests.

Courts are not endowed with a wisdom of Solomon or the prophetic vision of a seer. Everyday events suggest that the needs of the wife and the children and the ability of the husband to pay through economic changes or other uncontrollable events are common occurrences in the life or lives of mankind and change from time to time. The interests of all parties would be best served by doing as the trial court did—provide for periodic alimony with the power to adjust tomorrow's needs to the ability to pay as the changing circumstances may warrant.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

SIMKINS and KASSERMAN, JJ., concur.