IRMA GREEN, Plaintiff-Appellee, *v.* IRVING GREEN, Defendant-Appellant.

First District (3rd Division)    Nos. 58227, 58626, 58627 cons.

Opinion filed April 15, 1976.—Supplemental opinion filed upon denial of rehearing September 23, 1976.

Levin and Berger, of Chicago (Burton Berger and Arnold B. Malk, of counsel), for appellant.

Rinella & Rinella, of Chicago (Samuel A. Rinella and Stuart Litwin, of counsel), for appellee.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Irma Green, commenced proceedings for divorce against defendant, Irving Green. Following a lengthy trial without a jury, a judgment for divorce was entered in favor of plaintiff which included an award of alimony in gross "in the aggregate sum of $678,000" comprised of nine specified items of property. Defendant was ordered to pay plaintiff attorney fees of $50,000 plus costs and expenses, in addition to a prior allowance of $7,500 for temporary fees. Defendant filed a notice of appeal from the judgment. The trial court then entered an order awarding plaintiff $2,300 per month as temporary alimony pending the appeal and a further order for attorney fees of $7,000 plus costs to defend the appeal. Defendant filed separate appeals from the subsequent orders. The appeals are consolidated in this court.

On appeal defendant contends that the trial court (1) was without jurisdiction of the subject matter in that plaintiff was not a resident of the County of Cook and State of Illinois as required by statute; (2) erred in awarding alimony in gross, and alternatively, that the award is excessive; (3) erred in awarding alimony pending appeal; (4) erred in awarding attorney fees in the trial court, and alternatively, in an excessive amount; and (5) erred in awarding attorney fees to defend the appeal, and alternatively, in an excessive amount.

Plaintiff and defendant were married on August 18, 1936, and separated on September 10, 1968. Two children were born of the marriage, each of whom has attained majority and is emancipated. Prior to separation the parties maintained several residences. They jointly owned a home in Long Grove, Lake County, Illinois, while maintaining an apartment in Florida and also leasing a furnished hotel apartment at the Astor Towers in Chicago. They lived in the Long Grove home for several years until early 1968 when the home was vacated and later sold. During the summer of 1968 they lived together at the Astor Towers apartment until defendant left on September 10, 1968. That apartment was rented on a monthly basis and rent was paid only for the months of occupancy.

Defendant testified that plaintiff had an apartment in Florida where he occasionally lived with her prior to the separation. Plaintiff testified that since the separation she has lived at the Astor Towers apartment for six or seven months during each year of 1969 and 1970, never having a written lease, and lived in her Florida condominium during the winter months. She testified that when they vacated the Lake County home some of the furniture was put in storage, some given to their daughter, and the remainder used at the Florida apartment. She alleged in her complaint

and testified at trial that her permanent address was the Astor Towers Hotel and that she was a resident of Cook County, State of Illinois, for more than one year before filing the complaint for divorce on February 3, 1970. She further testified that she retained her driver's license and voter's registration at the Lake County address where she last voted about seven years before. No evidence was introduced that she ever changed her voter's registration or driver's license to any other place or State.

The parties testified that prior to the purchase of the Florida condominium by plaintiff they had lived in an apartment in Florida for six years during the winter seasons.

Prior to and during 1969, defendant earned $70,000 per year as president of Mercury Record Productions, Inc., and also received interest, dividends and income from various real estate and other investments, many of which were fractional interests held with different persons and groups. After the separation in 1968, defendant continued to pay all of plaintiff's bills and unlimited charge accounts. At the end of 1969 defendant severed his employment with Mercury and his annual income therefrom was discontinued. He then notified plaintiff of the termination and that he was closing all of the charge accounts. He then voluntarily commenced paying plaintiff $1,200 per month to cover her expenses, which payments were continued throughout the proceedings.

Plaintiff testified that during the marriage she had a Cadillac automobile, unlimited charge accounts, a monthly cash allowance, and regularly visited a daughter in New York. The couple had vacationed frequently at home and abroad and enjoyed many social activities. Plaintiff testified that she had no independent income; that $1,200 a month was insufficient and that she would require $3,000 per month net after taxes to meet her average monthly expenses. She enumerated those expenses to include: $600 rent for the Astor Towers apartment, plus $45 garage, $100 utilities, $120 maid service; $200 food; $95 automobile maintenance and insurance; $550 clothing; $150 grooming; $100 doctor; $50 drugs; $100 golf and social clubs; $600 entertainment; $50 gifts; $30 charitable contributions; $20 newspapers and magazines; $350 vacations; $100 condominium maintenance fees; and unpaid bills of $5,780.

Defendant particularly challenged the rental and maid service at the Astor Towers apartment which were claimed as regular monthly expenses. He contended that such items should be limited only to the months of occupancy in each year.

Each party presented testimony of witnesses as to the purported value of the various assets and properties owned by defendant which included some 21 items. The valuations were sharply controverted over a wide range, with a great disparity in value as to each item and in the aggregate. Plaintiff contends that the assets had a market value of approximately

\$3,000,000; defendant valued the same assets at approximately \$1,000,000. The court found the fair market value to be \$1,900,000, and based thereon awarded alimony in gross in the aggregate amount of \$678,000, comprised of nine items of real and personal assets specifically described in the judgment for divorce.

Plaintiff's attorney testified that he spent 378 hours of office time and 54 hours of court time and would require 15 hours of office time and 4 hours of court time to conclude the proceedings. Based thereon, he requested a fee of \$75,000. The court orally found the fair and reasonable fee would be \$45,000, but in the judgment for divorce ordered defendant to pay plaintiff attorney fees of \$50,000 plus court costs, which was expressly in addition to the temporary fees of \$7,500 previously allowed. Following defendant's appeal from the judgment for divorce, plaintiff petitioned for temporary alimony pending appeal and was granted \$2,300 per month for alimony pending appeal and was awarded attorney fees of \$7,000 plus costs to defend the appeal.

I.

■■■ Defendant initially contends that plaintiff failed to satisfy the tandem prerequisites as to residence required by sections 2 and 5 of the Divorce Act (Ill. Rev. Stat. 1969, ch. 40, pars. 3 and 6). He argues that the evidence shows plaintiff's lack of permanency in Illinois and the lack of her intent to remain in Illinois on any permanent basis. Section 2 (par. 3) of the Divorce Act requires that a party seeking a divorce be a resident of Illinois for one year prior to filing the complaint, and section 5 (par. 6) requires that one of the parties be a resident of the county in which action is brought. "As used in the Divorce Act, 'residence' thus denotes 'permanent abode.' It is the place one considers as 'home.' Of paramount importance in determining whether a given place is or is not one's residence is the intent of that person to live there as his permanent home. [Citations.]" (*Garrison v. Garrison* (1969), 107 Ill. App. 2d 311, 314, 246 N.E.2d 9.) Whether or not a party has abandoned one residence in favor of another in a different jurisdiction is a question of fact. (*Cohn v. Cohn* (1945), 327 Ill. App. 22, 63 N.E.2d 618.) As stated in the recent opinion in *Davis v. Davis* (1973), 9 Ill. App. 3d 922, 926, 293 N.E.2d 399, "Affirmative acts of abandonment of the Illinois residence must be proved to sustain abandonment. Temporary absence, admittedly lengthy in this case, does not equate with abandonment."

■■ The record contains sufficient circumstances and evidence to support plaintiff's allegations in her complaint that she resided in Cook County and the State of Illinois for more than one year. The parties were married and lifelong residents of Illinois. At the time of separation they lived at the Astor Towers apartment in Chicago. Thereafter, plaintiff

occupied the same apartment for six or seven months of each year and designated it as her permanent address. This was sufficient to indicate her intent to establish the apartment as her permanent abode and address. The winter sojourns in Florida were seasonal and temporary in nature; in fact, a continuation of the pattern established by the parties over many previous years. The ownership of a condominium in Florida as opposed to the month-to-month rental on a seasonal basis of a furnished apartment in Chicago does not preclude a determination of an Illinois residence. There is no evidence of an abandonment by plaintiff of her Chicago residence, nor any intent to make Florida her permanent home. Defendant's reliance on *DeKlade v. DeKlade* (1923), 231 Ill. App. 50, is misplaced. There the plaintiff wife was a traveling theater performer and failed to establish the necessary residence requirement by two- or three-week stays at a Chicago hotel which stays were incident to her performances in the city. The facts are clearly distinguishable from the instant case. The trial court's finding of plaintiff's residence in Cook County, Illinois, is not against the manifest weight of the evidence. *Hoffmann v. Hoffmann* (1968), 40 Ill. 2d 344, 239 N.E.2d 792; and *Davis v. Davis*.

## II.

Defendant next contends that the trial court abused its discretion in awarding plaintiff alimony in gross in lieu of periodic payments, and alternatively, that the award is excessive and an inequitable division of the property, and as such, visits punitive damages upon the defendant. Plaintiff argues that the trial court was persuaded that periodic alimony would be unfit and lead to further litigation and that therefore, the trial court acted within the scope of its discretion in opting for an award of alimony in gross.

The judgment for divorce included findings that at the time of marriage neither party was possessed of any significant or substantial assets, but that defendant prospered during the course of the marriage; that the parties enjoyed a high standard of living; that plaintiff received on a voluntary regular basis $1,200 a month and that she now requires $3,000 per month net after taxes to maintain her standard of living. A finding relative to the award in gross provided:

> "11. That, although it is the policy of the law generally to award to the wife as and for her support and maintenance permanent alimony in a fixed periodic amount commensurate with her need and with the ability of the husband to pay, the exigencies of the case at bar, as evidenced by the fact that the defendant IRVING GREEN has removed himself from the State of Illinois and has taken up residence in a foreign jurisdiction, the evidence of severe

bitterness of feeling between the said parties, the continuing reluctance of the defendant IRVING GREEN to provide the plaintiff with more than what, considered in the light of the financial circumstances of the parties and the continued luxurious scale of living of the said defendant, constitutes a bare minimum of support, the propensity of the defendant IRVING GREEN to engage in speculative ventures of high risk which have frequently resulted in financial loss to him, and the vigor with which the said defendant has throughout the litigation of this cause defended its financial aspects, render it virtually certain that an award of periodic alimony to the plaintiff would be productive only of continued litigation on both their parts dictate that this Court exercise its discretion, pursuant to the statute of the State of Illinois in such case made and provided, being Smith-Hurd Illinois Annotated Statutes, Chapter 40, Section 19, to award to the plaintiff alimony in gross in the lieu and stead of permanent alimony."

The judgment in paragraph (b) of the decretal provisions provided *inter alia* "that the plaintiff be, and she is hereby, awarded alimony in gross in the aggregate sum of $678,000, comprising the following items," and specified 9 items including a $108,000 note of Muntz Stereo Pak, Inc; all interest in the stock and assets of Dunton Building Corporation, a shopping center; defendant's one-third interest in vacant land designated as Golden Isle property, in Hollendale, Florida; one-half of defendant's interest in vacant land in Lake Zurich, Lake County, Illinois; one-half of defendant's interest in vacant land owned jointly by the parties in Titusville, Florida; 101,500 shares (as later revised) of Norco Oil Company, being one-half of defendant's 203,000 shares; and defendant's interest in vacant land in Miami Shores, Florida, owned jointly by the parties. In addition, plaintiff was awarded escrow funds of $45,000, being her share of the proceeds from the sale of the Long Grove home, and also the condominium apartment, title to which was previously in her name. The remainder of the property and assets of the parties was awarded to the defendant.

■■■ In Illinois the transfer of property from one spouse to another, pursuant to a divorce decree, is governed by statutory powers granted under sections 17 and 18 of the Divorce Act (Ill. Rev. Stat. 1973, ch. 40, pars. 18 and 19), rather than general equity powers. (*Debrey v. Debrey* (1971), 132 Ill. App. 2d 1072, 270 N.E.2d 43.) Section 17 empowers the court to direct the transfer of property upon proper allegation and proof by the requesting spouse of an equitable ownership in the property claimed, unlike section 18 which does not require any allegation or proof of equitable ownership. (*Klaisner v. Klaisner* (1975), 28 Ill. App. 3d 110,

113, 328 N.E.2d 341.) In the instant case plaintiff did not claim any equitable interest. Therefore, section 18, which is not preconditioned upon a showing of special equities, must be considered. A trial judge thereunder may award either periodic alimony payments or alimony in gross (Ill. Rev. Stat. 1973, ch. 40, par. 19).

> "When a divorce is decreed, the court may make such order touching the alimony and maintenance of the wife or husband, the care, custody and support of the children, or any of them as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just and, * * *. The court may order the husband or wife, as the case may be, to pay to the other party such sum of money, or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement in lieu of alimony, as the court deems equitable."

Under section 18, all that is required is that the recipient spouse be entitled to alimony and that the conveyance be equitable. (*Schwarz v. Schwarz* (1963), 27 Ill. 2d 140, 149, 188 N.E.2d 673.) Although both the form and the amount of alimony rest primarily in the discretion of the trial court it usually takes the form of periodic payments which can be modified to meet changing standards; however, in situations where such an award may not fully achieve a fit, reasonable and just result, alimony in gross is authorized under section 18. (*Overton v. Overton* (1972), 6 Ill. App. 3d 1086, 287 N.E.2d 47; *Harding v. Harding* (1974), 18 Ill. App. 3d 550, 310 N.E.2d 19; *Hall v. Hall* (1974), 18 Ill. App. 3d 583, 310 N.E.2d 186.) As emphasized in *Scruggs v. Scruggs* (1974), 23 Ill. App. 3d 1004, 1007-08, 320 N.E.2d 406, "Unless the circumstances justify a different course of action, the usual and proper practice is to award permanent alimony in such manner that it will remain in the control of the court."

While the award of alimony in gross in lieu of periodic payments is within the discretion of the trial court (*Lieberman v. Lieberman* (1975), 25 Ill. App. 3d 654, 323 N.E.2d 785), an abuse of such discretion is the proper subject of review and correction in this court. (*Overton v. Overton*; *Canady v. Canady* (1964), 30 Ill. 2d 440, 197 N.E.2d 42.) In *Lieberman* the court rejected the contention that alimony in gross is appropriate only where there are exceptional circumstances or where periodic payments are not feasible, and held that the award of alimony in gross was not an abuse of discretion. However, the facts there indicated that the defendant husband owned 52 to 54 per cent of the stock of the corporation from which he derived his income, and that his mother held the balance. Moreover, in Illinois, there is a judicial preference for the periodic payment of alimony rather than awards in gross. (*Schwarz v. Schwarz*; *Scruggs v. Scruggs*; and *Honey v. Honey* (1970), 120 Ill. App. 2d 102, 256

N.E.2d 121.) The usual and proper practice of awarding alimony is to do it in such manner that it will remain within the control of the court. (*Schwarz v. Schwarz*, at 147.) Alimony in gross may be awarded where the entire record shows that periodic payments are not feasible, as where a spouse does not pay his bills or will not work, or where the husband was regularly intoxicated and refused to work, or again, where the husband's occupation was so hazardous that he might be unable to continue to produce income. *Honey v. Honey*; see also Neumark, *Property Rights in Divorce*, 62 Ill. B. J. 242 (1974).

In the instant case, the parties have no minor children; they are both in their mid-50's and have established separate life styles. Other than the recent fluctuation in defendant's income—a factor which may militate against either form of award in gross or periodic payments—there are no facts which negate the preference for an award of periodic alimony. We are therefore required to further examine the facts to determine whether or not the trial court's award of alimony in gross was just and equitable in light of the alternative award available under periodic payment of alimony.

■■ In the instant case, the trial court found that the defendant had removed himself from the State of Illinois and had taken up residence in a foreign jurisdiction. Plaintiff relies on *Riddlesbarger v. Riddlesbarger* (1950), 341 Ill. App. 107, 93 N.E.2d 380, to support the award of alimony in gross. The court there found *inter alia* that the defendant, since the time he was served with summons, had continuously lived on his ranch outside the jurisdiction of the court and had refused to comply with numerous court orders. Here, however, no evidence was introduced that defendant either intentionally removed himself from the jurisdiction of the court to avoid its orders or refused to comply with any of the orders entered against him. On the contrary, the evidence shows that defendant took up residence outside the State of Illinois prior to the commencement of these proceedings and that he fully complied, although over protest, with the numerous orders of the court. We are unable to conclude from the facts in this case, as was done in *Riddlesbarger*, that the trial court would not be able to enforce its orders if periodic alimony was awarded. The court can effectively retain jurisdiction of the parties and the subject matter to enforce compliance with its orders.

■■ In the instant case the trial court found there was evidence of severe bitterness of feeling between the parties. In *Persico v. Persico* (1951), 409 Ill. 608, 100 N.E.2d 904, the Supreme Court upheld the trial court's award of alimony in gross. One of the special circumstances justifying the order was the continued ownership of property held by the parties as tenants in common which would result in endless quarreling and bickering. However, realistically, bitterness of feelings in a contested

divorce is not uncommon and is frequently present in the initial determination of property interests. Severe bitterness of feelings most often becomes intensified when property rights or alimony are in dispute, especially in cases such as the one before us where great sums of money are involved. There is no finding, nor does the record affirmatively reflect that the bitterness between the parties here will impair or impede the ability of the court to enter or enforce appropriate orders upon a final determination of the issues. Here, the only prior ownership in common involved the Titusville and Miami Shores vacant real estate which represented minimal values. Unlike *Persico*, there is no common ownership of substantial property which would likely generate continued litigation other than the joint interests in fact created by the present award.

The trial court further found that the continued "reluctance" of defendant to provide plaintiff with more than what constitutes bare minimal support, in light of the financial circumstances of the parties and the "continued luxurious scale of living of said defendant," constitute special circumstances justifying the award of alimony in gross. An examination of the record discloses that defendant at all times voluntarily provided for plaintiff's support from the time of their separation to the time of the filing of the complaint for divorce. Defendant decreased the amount of his voluntary payments to $1,200 per month upon termination of his employment as president of Mercury because his income was thereby reduced approximately $70,000 per year. The evidence does not support the finding of the trial court or the argument of plaintiff on appeal that the defendant continued a luxurious scale of living after the parties' separation. Furthermore, defendant offered, through a property settlement agreement presented in open court but later rejected by plaintiff, to pay plaintiff approximately $28,000 a year as alimony, which is definitely more than a "bare minimal" in light of plaintiff's testimony as to her needs. There is also no evidence of defendant's intent to deprive plaintiff of proper support. Neither does the record show that the defendant maliciously reduced his voluntary support to plaintiff at the end of 1969 when his salary from Mercury was terminated.

The evidence here shows that the defendant's gross annual income fluctuated as indicated by the following: 1966, $232,000; 1967, $513,000; 1968, $488,000; 1969, $58,000; 1970, $30,000. During the earlier years the income from Mercury of $70,000 constituted a minor part. There is nothing in the evidence to indicate that defendant spent more or less than $1,200 per month for his own purposes during 1969 or 1970. His voluntary payment of support to plaintiff after the elimination of his income from Mercury indicates an acknowledgment of his duty and willingness to

provide for his wife. See *Blowitz v. Blowitz* (1966), 75 Ill. App. 2d 386, 221 N.E.2d 160.

The trial court expressly also found that throughout the litigation defendant vigorously defended his financial aspects. During the trial and also on appeal the parties disagreed with a great divergence of opinion as to the estimated net worth of defendant. The trial court set forth in its findings that the plaintiff claimed the assets of defendant had a market value of approximately $3,000,000, which the defendant valued at approximately $1,000,000. However, the evidence at trial indicates that plaintiff argued defendant's net worth was in the neighborhood of $2,500,000 and that defendant argued his net worth approximately $1,400,000. The court, in orally pronouncing its findings, ascribed values to merely three of the 21 assets of defendant, and stated that the case was extremely difficult because of the financial complexity, primarily the difficulty in ascertaining the financial value of much of the property which included unlisted stocks and real estate of speculative value. However, the court specifically found in the judgment that defendant's assets amounted to about $1,900,000. Considering the amount of money involved and the wide range of values assigned to the assets by each of the parties, it is not unreasonable for defendant to vigorously defend what he considered to be his true financial status. Furthermore, plaintiff, at least as vigorously as defendant, sought to value the assets in accordance with estimates more favorable to her and sought to acquire the most stable and valuable items for her benefit. Such a contest between the parties, even though bitterly fought, most often results in the presentation of the best evidence upon which a trial court can rely in making a determination of value. Here, there is no allegation or evidence that defendant fraudulently concealed assets or gross income. The court is an appropriate forum in which to present arguments and to do so vigorously. Vigorous defense of one's financial status, either in the valuation of assets or in the desire to retain as many assets as possible, does not necessarily require an award of alimony in gross, nor the rejection of a periodic payment of alimony.

■■ The trial court here further found that the propensity of defendant to engage in speculative ventures of high risk which had frequently resulted in financial loss also renders virtually certain the possibility that an award of periodic alimony would be productive only of continued litigation. Plaintiff seeks to equate this circumstance with the husband's fraudulent concealment of assets in *Glassman v. Glassman* (1971), 133 Ill. App. 2d 608, 273 N.E.2d 608, 273 N.E.2d 252 (abstract opinion); with the husband's past violent conduct and chronic inebriation in *Dmitroca v. Dmitroca* (1967), 79 Ill. App. 2d 220, 223 N.E.2d 545; with the husband's heavy indebtedness in *Simpson v. Simpson* (1963), 29 Ill. 2d

49, 193 N.E.2d 10; and with the husband's hazardous occupation as a U.S. Air Force pilot in *Rodely v. Rodely* (1963), 28 Ill. 2d 347, 192 N.E.2d 347. However, the single thread which is woven through the facts of each case in which alimony in gross was awarded is the intent of the courts to buoy the wife's financial security by minimizing the risks inherent in periodic alimony awards (see Neumark, *Property Rights in Divorce*, 62 Ill. B. J. 242 (1974)). In the instant case, the assets listed as owned by defendant, except for two items, namely, $1,000 in cash and a $30,000 sailboat, constitute investments in either real estate, notes or securities. The only evidence of defendant's income other than dividends, interest or partnership investment returns, was the annual salary of $70,000 which had been received from Mercury. It is apparent from the record that defendant was dependent for the major part of his annual income on the investments. There is no evidence directly bearing upon the stability or speculative nature of those investments which weighs in favor of an award of alimony in gross.

Here, the effect of the decree is to deprive defendant of his investments which remain as his only source of income. While he terminated his employment with Mercury which had provided a somewhat fixed salary income of $70,000 per year, the greater part of his income over the years of such salary came from his investments. Although it is alleged that there have been some losses, it is clear that defendant had been very successful in the ultimate results of his investments. Furthermore, the decree made no provision for and failed to consider defendant's potential liabilities in excess of $756,000 which he and his various associates had undertaken incident to the investments. Even though defendant's liabilities may be shared with the other investors, no portion of the liability is assumed by plaintiff. It is also significant that although the investments were alleged to be highly speculative, plaintiff sought and was awarded such property in kind. The difficulties of a more exact valuation of defendant's assets, because of the fractional interests, make difficult a fair and equitable division of the property in kind.

Plaintiff concedes in her arguments in this court that the dollar amount of the properties transferred to her range between $693,750 and $954,500 (after deducting the $50,000 attorney fees) or "somewhere between 39% and 50% of [defendant's] total assets as alimony in gross." Plaintiff maintains that this was reasonable, equitable and commensurate with defendant's financial abilities. We disagree.

■■■ The award of alimony in either form must be "fit, reasonable and just" (Ill. Rev. Stat. 1973, ch. 40, par. 19) *as between both parties*, and if alimony in gross is awarded, the award must be equitable *between both parties*. As stated in *Busby v. Busby* (1973), 11 Ill. App. 3d 426, 430-31, 296 N.E.2d 585, "An award of alimony should not be made so high as to cause

financial difficulties and personal embarrassment on the part of the husband which may impair his earning capacity, for even a husband with a comparatively large income who has wronged his former wife must live up to the standards required by his job and enjoy reasonable peace of mind." The assets which were awarded plaintiff were primarily investment property. No evidence was offered as to the rate of return on such assets; however, assuming plaintiff's liquidation of the assets at $800,000 and a conservative investment of only 6% a year, plaintiff would receive approximately $48,000 per annum in income and yet have an estate in excess of three quarters of a million dollars. Defendant, on the other hand, would receive no tax benefit and his annual income from the remaining assets would be most significantly reduced. Therefore, the above facts and the lack of evidence to indicate defendant's refusal to support plaintiff according to her needs, or his inability to do so, do not support a finding that periodic payments would not be feasible or practicable. Relative to periodic payments, it is noted that the parties in their negotiations had considered the establishment of trust devices to guarantee payment which the court is clearly authorized to require to provide sufficient security for payment of alimony. It is well established that a trial court may make any orders necessary or appropriate to secure payment of alimony. See *Byerly v. Byerly* (1936), 363 Ill. 517, 2 N.E.2d 898.

We conclude that the award of alimony in gross was inequitable and that periodic alimony should have been awarded. Defendant has not contested the award to plaintiff as her sole property the ownership of the Florida condominium or her right to one-half the proceeds of the Lake County home, and we find no need to disturb the finding and judgment of the trial court in such respect. However, the remaining provisions of the award of alimony in gross are reversed and the cause remanded to the trial court to currently determine the assets and earnings of the defendant, to award periodic payment of alimony according to plaintiff's needs and defendant's ability, and to make all appropriate and necessary orders as may be determined by the trial court not inconsistent with this opinion.

### III.

■■ Defendant next contends that the trial court erred in awarding attorney fees to the plaintiff and alternatively, in awarding an excessive amount. The decree provided that defendant pay to the attorney for plaintiff $50,000 in the trial court in addition to the temporary attorney fees of $7,500 previously allowed. Defendant argues that because of the award of alimony in gross, and even prior thereto, plaintiff was financially more able to assume her own attorney fees than defendant.

Section 15 of the Divorce Act (Ill. Rev. Stat. 1973, ch. 40, par. 16)

authorizes the trial court to award either party necessary attorney fees to defend or maintain the action for divorce in the trial court. It is well established that the allowance of attorney fees in a divorce proceeding rests in the sound discretion of the trial court and will not be disturbed on appeal unless the discretion has been clearly abused. *Canady v. Canady* (1964), 30 Ill. 2d 440, 446, 197 N.E.2d 42; *Rosenberger v. Rosenberger* (1974), 21 Ill. App. 3d 550, 316 N.E.2d 1; and *Loveless v. Loveless* (1972), 3 Ill. App. 3d 967, 279 N.E.2d 531.

In *Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 1050, 318 N.E.2d 282, the court awarded additional temporary attorney fees of $3,200, although plaintiff had $13,000 available in money on deposit. The court stated:

"It is a settled rule that to justify allowance of attorneys fees in a divorce suit, the party seeking this relief must show financial inability to pay and the ability of the other spouse to do so. [Citations.] However, in this context, financial inability does not mean destitution. In divorce cases, when questions arise concerning suit money, the income and assets of both spouses must be considered; and if the wife's funds, though she has some, are insufficient, those of the husband can be reached so that the wife, without exhausting her own estate, can protect her rights in the marital litigation. [Citation.]

\* \* \* And in analogous domestic relations, it is generally recognized that financial inability exists where to enforce disbursement of available funds would strip the person of the means of his support and undermine his economic stability. [Citations.]"

In the instant case, the trial court awarded plaintiff various assets owned by defendant and specifically indicated that defendant would be required to assume the payment of plaintiff's attorney fees. The record shows that the trial court would otherwise have given plaintiff assets having a greater value to compensate for such fees and that prior to the award the value of plaintiff's individual assets, in comparison to defendant's, was disproportionately low. The record amply shows that the court considered the assets of both parties and specifically provided that the allowance was in addition to the award made for plaintiff's own benefit and that plaintiff was not required to exhaust her available funds. Under the facts and circumstances, the trial court did not abuse its discretion in ordering defendant to pay the attorney fees and costs to plaintiff's attorney. We must therefore next consider defendant's alternative contention that the amount of fees awarded for legal services in the trial court is excessive and unreasonable.

At the hearing as to fees plaintiff's attorney testified that he had been a

member of the Illinois Bar since 1928 and specialized in matrimonial law for 25 years. He presented time sheets showing that he and his associates had expended 378 hours of office time and 54 hours of court time and that an additional expenditure of 15 hours of office time and 4 hours of court time would be necessary for completion. This aggregated 393 hours of office time and 58 hours of court time, for a total of 451 hours. The attorney acknowledged that approximately 25 percent of the time was expended by his associate. No evidence was taken as to the reasonableness of the fees, nor was a request made for such hearing. However, a trial judge may properly award fees in a divorce case without hearing evidence as to the reasonableness of the fees. (See *Kaufman v. Kaufman.*) Plaintiff's attorney requested $75,000 in fees for services rendered in the trial court, emphasizing the factors of time, the caliber of his opposition, the value of the assets involved, the alleged noncooperation of defendant in disclosing his assets and income, and the type of contest. The trial court orally stated that the requested amount of $75,000 was warranted from the standpoint of the services rendered, but concluded that the fair and reasonable fee, in addition to the temporary fees previously allowed, would be $45,000 plus costs. Nonetheless, the written judgment entered by the court expressly found that the time was expended as testified, then decreed payment in the amount of $50,000.

The 58 hours of court time appear to have been rendered personally by the attorney to whom the payment was awarded. The time represents less than 13 percent of the total of 451 hours for which claim was made. The fees awarded in the judgment, together with the $7,500 previously ordered as temporary attorney fees, amount of $57,000 for 451 hours. Without allocating the hours between the court, office and associate time, the fee is equivalent to an average rate of $127.50 per hour.

■■ As a general rule, the fixing of the amount of attorney fees in a contested proceeding usually presents a delicate question. A proper yardstick to measure such fees is that the allowance be only in such amount as will compensate for the services rendered. The allowance must square with fairness to all alike under similar facts and circumstances *(Novack v. Novack* (Fla. App. 1966), 189 So. 2d 513, 514). The amount of the fees depends on the consideration of, in addition to the relative financial ability of the parties, the nature of the controversy, the question at issue, the significance or importance of the subject matter, the degree of responsibility involved, the standing or skill of the person employed, and the time and labor involved. *(Greenbaum v. Greenbaum* (1973), 14 Ill. App. 3d 217, 221, 302 N.E.2d 165; also see *Roback v. Roback* (1965), 59 Ill. App. 2d 222, 207 N.E.2d 130; 16A Ill. L. & Pr. *Divorce* §205 (1972).) The issue before us concerns the reasonable value of the services rendered by the attorney for plaintiff. The allowance made should be fair

and reasonable with fairness and justice to all the parties concerned; namely, the attorney to be compensated, the client, and the person required to make the payment. The fee here allowed is in a very substantial amount, and it must be recognized that a determination of substantial assets is also involved. The standing and skill of plaintiff's attorney is well recognized and has not been challenged. The financial ability of the person required to make the payment *may limit* the amount to be awarded, notwithstanding the extensive expenditure of time and labor which may have been required, but on the other hand, the financial ability does not warrant an allowance beyond a fair and reasonable amount. It is therefore necessary to review cases in which the rate of compensation has been considered.

As recognized in *Greenbaum v. Greenbaum,* there are several factors which must be considered in determining the reasonableness of the fees. In *Moreau v. Moreau* (1973), 9 Ill. App. 3d 1008, 293 N.E.2d 680, the court held that the record failed to establish that the fees were fair and reasonable and remanded the issue for further hearing. However, the case has significance here in that plaintiff's attorney there testified that a total of $2,460 was owed for services, although the time expended was not set forth. He testified that his customary hourly charge was $35 for office and $50 for court time. The remand was necessary because the record was devoid of bills, written accounts, or a detailed breakdown of the nature of necessity of the services performed. However, in *Greenbaum,* this court reversed an award of $3,550 for plaintiff's attorney fees as being inadequate, and fixed a fee of $8,190 on the basis of a rate of $35 per hour. The evidence disclosed that plaintiff's attorneys, a prestigious law firm, spent 168 hours of office time which it had billed at $60 per hour, and 66 hours of court time billed at $100 per hour. Counsel on appeal was sustained in his argument that the award should be $8,190 if the minimum fee standard of the Chicago Bar Association of $35 per hour was followed. We take judicial notice that the minimum fee schedule then in force has been completely withdrawn by the Chicago Bar Association. In *Lauzen v. Lauzen* (1967), 81 Ill. App. 2d 472, 225 N.E.2d 427, an award of $3,000 for attorney fees was affirmed. Counsel there testified that he expended 240 hours and that the fair rate for his services was $50 an hour; however, his petition for fees stated 200 hours and that the customary reasonable charge was $25 an hour for office time and $35 for court appearances. *Teich v. Teich* (1971), 132 Ill. App. 2d 348, 270 N.E.2d 525, held that there was no abuse of discretion in the trial court's allowance of $5,000 for plaintiff's attorney fees, based on a petition which showed 319½ hours expended. In *Bergstrom v. Kuhn* (1974), 17 Ill. App. 3d 135, 307 N.E.2d 667 (abstract opinion), an allowance of $500 for the wife's attorney's fees was held inadequate and was reversed and remanded for futher hearing

as to fees. There the attorney sought fees for 30 hours in court at $50 per hour and for 60 hours of out-of-court time at $40 per hour.

Although not involving divorce proceedings, the following cases reach the issue of reasonableness of attorney fees. In *Anundson v. City of Chicago* (1973), 15 Ill. App. 3d 1032, 305 N.E.2d 376, this court held that the trial court did not err in taking judicial notice that $40 an hour was a reasonable and proper standard in fixing attorney fees for the enforcement of a city ordinance. The trial court there allowed $11,260 for 279 hours and $1,560 for 39 hours of legal services expended. Again, in *Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1, the trial court awarded $750,000 to two attorneys for representing certain taxpayers in a class action suit which had declared unconstitutional the method of tax collection which allowed commissions on the tax collections of township collectors. The two attorneys testified to spending 3,700 and 3,765 hours respectively for a total of 7,465 hours over a 4½-year period of litigation. The Supreme Court observed that although the allowance of fees was contingent upon a favorable result being obtained it was not the usual contingent fee case, but rather, provided for an amount to be taken by order of the court from money that belonged to others. The court stated at page 67: "The rights of those others must be carefully considered as well as those of the attorneys. In our opinion the time expended in such a case is not to be relegated to a secondary or minor position; it is a highly significant factor in determining the fee." The award of attorney fees there was held proper but the amount was held excessive and was reduced to $560,000. The reduced fee amounts to an allowance of $75 per hour, notwithstanding that the court expressly recognized that the main litigation was complex and difficult, vigorously and bitterly contested, and the fee entirely contingent.

No Illinois cases have been cited, nor have we been able to find any in which an hourly rate of $127.50 has been considered or approved. In light of the cases just reviewed, and upon full consideration of the instant case, we conclude that the aggregate allowance of $57,500 in attorney fees in the trial court, which amount includes $7,500 temporary fees previously allowed, is excessive and unreasonably high. In our opinion, an aggregate attorney fee of $27,500 for the services rendered plaintiff in the trial court is fair, reasonable and adequate. Therefore, the allowance of $50,000 in the judgment for divorce should be modified and reduced to $20,000, which reduced amount shall be in addition to the temporary attorney fees previously allowed.

## IV.

■■ Defendant next contends that the trial court abused its discretion in awarding plaintiff $2,300 per month as alimony pending this appeal.

Defendant argues that plaintiff had available approximately $47,000 in cash held in escrow at Chicago Title & Trust Company, representing her half of the proceeds from the sale of the Lake County home. Defendant maintains that plaintiff therefore was not without funds with which to maintain herself pending appeal. Section 15 of the Divorce Act specifically authorizes the trial court, in case of appeal by a spouse, to grant to the other such money for defense and such equitable alimony during the pendency of the appeal as to the court shall seem reasonable and proper. (Ill. Rev. Stat. 1973, ch. 40, par. 16.) The allowance of temporary alimony rests within the sound judicial discretion of the court and will not be disturbed unless there has been an abuse of discretion. (*Albert v. Albert* (1972), 10 Ill. App. 3d 539, 294 N.E.2d 695; *Greenbaum v. Greenbaum* (1973), 14 Ill. App. 3d 217, 302 N.E.2d 165; *Rosenberger v. Rosenberger* (1974), 21 Ill. App. 3d 550, 554, 316 N.E.2d 1.) As previously stated, financial inability does not mean destitution. In such cases it is proper to consider the income and assets of both spouses in determining the allowance. (See *Kaufman v. Kaufman.*) In the instant appeal, defendant has argued that he had proposed to pay plaintiff $28,000 per year as and for her alimony. This in effect represents an equivalent of $2,330 per month. Considering the defendant's proposal together with the testimony of plaintiff that she needed $3,000 per month, the ability of defendant to pay in comparison to plaintiff's ability, and the entire financial situation of both parties, together with the amount of the temporary award, we cannot say that the trial court abused its discretion. *Hoffmann v. Hoffmann* (1968), 40 Ill. 2d 344, 239 N.E.2d 792.

## V.

■■ Defendant finally contends that the trial court erred in ordering him to pay plaintiff $7,000 as attorney fees to defend this appeal. He again argues that plaintiff was more capable than he of providing for her own defense and, alternatively, that the allowance is excessive. Section 15 of the Divorce Act provides the authority for the trial court to make an allowance of such money for the defense of an appeal as the court may deem reasonable and proper. As in the case of alimony pending appeal, the allowance of attorney fees for appeal rests within the sound discretion of the trial court which allowance will not be disturbed in the absence of a clear showing of abuse. (*Rosenberger v. Rosenberger.*) The fees may be allowed only upon a finding that one spouse is able to pay and that the other is unable to do so. (*Woodshank v. Woodshank* (1973), 13 Ill. App. 3d 692, 300 N.E.2d 494.) However, again financial inability does not mean destitution, and it was correct for the trial court to consider the income and assets of both spouses in determining propriety of an allowance and the amount.

Plaintiff presented evidence as to the estimated number of hours of legal services required for the defense of the instant appeal. The attorney who intended to work on the appeal testified that he had been specializing in appellate practice for approximately four years, that his hourly charge was $60, and that approximately 150 hours of work would be necessary. Although defendant argues that the allowance of $7,000 by the trial court to defend the appeal is exorbitant and that the estimated time of 150 hours "appears to be a blown-up figure in light of the Record," there is nothing to contradict the testimony presented on behalf of plaintiff concerning the estimated time required or the reasonableness of the charges. Based on the estimated 150 hours of work, the allowance is equivalent to a fee at the rate of $46.60 per hour. The record required on appeal is voluminous. The evidence fails to show a clear abuse of discretion to warrant this court's disturbing the allowance of $7,000 for attorney fees to defend the appeal.

## VI.

For the foregoing reasons, the judgment for divorce is affirmed, except as to the following: (1) the award to plaintiff of alimony in gross, excluding the provisions as to the award to plaintiff of her ownership of the Florida condominium and her right to one-half of the proceeds of the Lake County home, is reversed and the cause remanded for proceedings consistent with this opinion; and (2) the amount of $50,000 ordered to be paid by defendant to the attorney for plaintiff's attorney fees in the trial court is modified and reduced to $20,000, which reduced amount is in addition to the temporary attorney fees, costs and expenses previously ordered to be paid.

Affirmed in part; modified in part; reversed and remanded in part.

McNAMARA and McGLOON, JJ., concur.

SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:

■■ Following the filing of our original opinion, plaintiff has filed a petition for rehearing in this court alleging *inter alia* the existence of new evidence. Relative thereto, she alleges that defendant at the original trial failed to disclose certain facts to the court concerning the value and extent of his interest in the property before the court, that he committed perjury as to the evaluation of certain of the assets, and that he fraudulently concealed assets and income from the court. Plaintiff requests that in the event of remand she not be precluded from presenting evidence in

174

support of the allegations nor from seeking an award of alimony in gross if warranted thereby. Our opinion was necessarily predicated upon the record before the court. If plaintiff is able to sustain her burden of proof, such new matters would bear directly upon the trustworthiness of the defendant and the determination whether the award of alimony should be in gross or in periodic payments. We have again carefully reviewed the record and reject all of the other claims made by the plaintiff in the petition for rehearing. Therefore, we adhere to our original opinion, provided, however, that the trial court on remand is expressly authorized to consider such new evidence as the parties may present, to conduct all further proceedings as may thereby be required, and in such event, to award alimony either in gross or in periodic payments as may then be appropriate, not inconsistent with the principles and view stated in this and the original opinion.

McNAMARA and McGLOON, JJ., concur.